## 43151. WILLIAMS v. KEMP.

(338 SE2d 669)

MARSHALL, Presiding Justice.

The applicant, Harold Glenn Williams, was convicted of burglary and murder, and he was given the death penalty for the murder conviction. His convictions and sentences were affirmed on direct appeal in *Williams v. State*, 250 Ga. 553 (300 SE2d 301) (1983). He has now filed this petition for writ of habeas corpus, complaining, among other things, that the trial court's instructions to the jury on malice and on presumption of intended consequences were unconstitutionally burden-shifting under *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). The superior court denied the petition, and we denied the application for certificate of probable cause to appeal. However, the United States Supreme Court granted the applicant's petition for writ of certiorari, and the case has been remanded to us for reconsideration in light of *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985), which was decided after our previous denial of the application to appeal in this case. We have granted the application by order; however, for reasons which follow, we affirm the judgment denying habeas relief.

The questions for decision are: Under what circumstances, if any, can *Sandstrom* error be harmless? Was any *Sandstrom* error harmless in this case? In answering these questions, it is necessary at the outset to undertake a review of *Franklin* and its progenitors. We will then state our holdings concerning the impact of these decisions upon the facts of the case under review.

### *Sandstrom v. Montana*

Sandstrom was convicted under Montana law of "deliberate homicide." Mont. Code Ann. § 45-5-102. Under this Montana statute, criminal homicide constitutes "deliberate homicide" if it is committed "purposely or knowingly." At trial, Sandstrom admitted that he had killed the victim, but he argued that he did not do so "purposely or knowingly" due to a personality disorder aggravated by alcohol consumption.

At trial, the trial judge charged the jury that, " '(t)he law presumes that a person intends the ordinary consequences of his voluntary acts.' " 442 U. S. at p. 513. The defense objected to this charge on the ground that it had the effect of shifting the burden of proof on the issue of purpose or knowledge to the defense in violation of *Mullaney v. Wilbur*, 421 U. S. 684 (95 SC 1881, 44 LE2d 508) (1975) and *Patterson v. New York*, 432 U. S. 197 (97 SC 2319, 53 LE2d 281) (1977). On appeal, the Montana Supreme Court disagreed, holding that the complained-of instruction only required the defendant to

produce some evidence that he did not intend the ordinary consequences of his voluntary acts, but did not require the defendant to disprove that he acted purposely or knowingly. *Montana v. Sandstrom*, 176 Mt. 492 (580 P2d 106) (1978).

On certiorari, the United States Supreme Court, in a unanimous vote, reversed. The Court held that a reasonable juror could have interpreted the instruction, that the law presumes that a person intends the ordinary consequences of his voluntary acts, in either of two impermissible ways.

First, it was held that a reasonable juror could have interpreted the instruction "as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption." 442 U. S. at p. 517. Under the Court's view, this would constitute a mandatory or conclusive presumption which would relieve the state of the burden of proving an element of the crime, i.e., that the homicide was committed purposely or knowingly; it would thereby conflict with the overriding presumption of innocence with which the law endows the accused and it would invade the factfinding function of the jury, in violation of *Morissette v. United States*, 342 U. S. 246 (72 SC 240, 96 LE 288) (1952) and *United States v. United States Gypsum Co.*, 438 U. S. 422 (98 SC 2864, 57 LE2d 854) (1978).

Second, the Supreme Court in *Sandstrom* held that the jury may have interpreted the instruction "as a direction to find intent upon proof of the defendant's voluntary actions (and their 'ordinary' consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence — thus effectively shifting the burden of persuasion on the element of intent." (Emphasis in original.) 442 U. S. at p. 517.

Thus, the Court indicated that it would not be constitutionally impermissible merely to require the defendant to come forward with some evidence contrary to the presumption, i.e., to place on the defendant a burden of producing evidence or a burden of production. However, the Supreme Court held that the jury in Sandstrom's case could have interpreted the presumption referred to in the complained-of instruction as meaning "that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state." 442 U. S. at p. 524. Such a presumption, said the Court, is constitutionally infirm under *Mullaney v. Wilbur*, supra, and *Patterson v. New York*, supra, as well as *In re Winship*, 397 U. S. 358 (90 SC 1068, 25 LE2d 368) (1970).

Importantly, in *Sandstrom* the Court also held that instructions to the jury, that the accused was presumed innocent until proven guilty and that the state had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased pur-

posely or knowingly, were not "rhetorically inconsistent" with the complained-of instruction. 442 U. S. at p. 518, n. 7. Thus, the Court held that the other jury instructions did not alter the possibility that the jury could have interpreted the complained-of instruction as creating a mandatory presumption or shifting the burden of persuasion with respect to an element of the crime to the defendant. As stated by the Court, "[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that, although intent must be proved beyond a reasonable doubt, proof of the voluntary slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt." 442 U. S. at p. 518, n. 7.

Finally, in *Sandstrom* it was also argued that any error in the charge was harmless under *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967). Since this issue, as well as other issues, was not considered by the Montana Supreme Court, the case was remanded for further proceedings. On remand, the Montana Supreme Court, noting that intent was the main issue at trial, held that it could not assert that the erroneous instruction could not reasonably have contributed to the jury verdict. *Montana v. Sandstrom*, 184 Mt. 391 (603 P2d 244) (1979).

### *Connecticut v. Johnson*

In *Connecticut v. Johnson*, 460 U. S. 73 (103 SC 969, 74 LE2d 823) (1983), the United States Supreme Court granted certiorari in order to reconcile the conflicting approaches which the courts of this country had taken in resolving the question concerning the circumstances under which a *Sandstrom* error can be deemed harmless.

At the time of the opinion in *Johnson*, there existed in state and federal courts basically three approaches to the question of whether *Sandstrom* error could be harmless. Under the first approach, a *Sandstrom* error would be considered harmless if the evidence of guilt was overwhelming. Under the second approach, the *Sandstrom* error would not be held harmless if the erroneous charge concerned a disputed issue in the case. Under the third approach, *Sandstrom* error was never considered to be harmless. See cases cited in *Connecticut v. Johnson*, 460 U. S., supra at p. 75, n. 1.

Johnson and four cohorts abducted a woman. Each of them raped her, after which Johnson bound her hands with wire and threw her over a bridge in a temperature of 23-28 degrees Fahrenheit with a wind-chill factor of negative 10 degrees Fahrenheit. They then took the victim's car, and they were subsequently arrested while they were

in or near the car.

Johnson's cohorts pleaded guilty. Johnson was charged with, and convicted of, attempted murder, kidnapping, robbery, and sexual assault. His defense was that the woman had consented to travel with the group and to have sex with them, and that Johnson did not intend to kill the woman or keep her car.

The trial court gave the jury general instructions concerning the presumption of innocence and the state's burden of proving beyond a reasonable doubt the existence of each element of the crime. In addition, the trial judge charged the jury that, " 'a person's intention may be inferred from his conduct and every person is conclusively presumed to intend the natural and necessary consequences of his act . . .' " 460 U. S., supra at p. 78. In charging the jury on the elements of the crime of attempted murder, the court again instructed the jury concerning the conclusive presumption. However, as to the kidnapping charge, the trial court instructed the jury that, "what a man's intention has been is necessarily very largely a matter of inference. . . ." Id. at p. 79, n. 6.

On appeal, the Connecticut Supreme Court reversed Johnson's attempted murder and robbery convictions because of the *Sandstrom* error in the general instructions. However, the court did affirm the appellant's kidnapping conviction on the ground that the permissive language in the kidnapping instruction cured the *Sandstrom* error in the general instructions, and the sexual-assault conviction was also affirmed on the ground that this was not a specific-intent crime. On certiorari, the United States Supreme Court affirmed.

A four-Justice plurality of the United States Supreme Court (composed of Justices Blackmun, Brennan, White and Marshall) held that although it is not true that "instructional error of constitutional dimensions may *never* be harmless," (emphasis in original) id. at p. 83, it is only in "rare situations" in which an appellate court can hold a *Sandstrom* error to be harmless. Id. at p. 87. Under the plurality reasoning, the trial judge's instruction to the jury, that the elemental fact or facts are conclusively presumed if the predicate fact or facts are proved, is the "functional equivalent" of the direction of a verdict on this issue. Id. at p. 84. Since this would result in the jury's failing to consider whether there was any evidence on the issue, the plurality held that even overwhelming evidence on the point would not render harmless the giving of the instruction as to the conclusive presumption. As stated by the plurality, "[a]n erroneous presumption on a *disputed element* of the crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon that evidence." Id. at p. 85. (Emphasis supplied.) The plurality thus concluded that, "[s]uch an error deprived [Johnson] of 'constitutional rights so basic to a fair trial that their infraction can

never be treated as harmless error.' *Chapman v. California,* 386 U. S., at 23, [87 SC at 827-828]." 460 U. S., supra at p. 88.

The plurality did allude to several situations in which harmless error could be found, to wit: If the erroneous instruction was given in connection with an offense for which the defendant was acquitted; if the instruction had no bearing on the offense for which the defendant was convicted[1]; if the defendant conceded the issue, as by admitting the act and pleading insanity or self-defense (see *Parker v. Pace,* 254 Ga. 634 (2) (331 SE2d 546) (1985); *Krzeminski v. Perini,* 614 F2d 121, 125 (6th Cir. 1980)); or, if the defendant pleaded alibi.

In *Johnson,* Justice Stevens concurred in the judgment of affirmance, because the Connecticut Supreme Court had refused to hold the *Sandstrom* error harmless, and this, in Justice Stevens' view, did not present a federal question.

The four-Justice dissent in *Johnson* (composed of Chief Justice Burger, and Justices Powell, Rehnquist and O'Connor) is based on the view that under the harmless-error precept enunciated in *Chapman,* a *Sandstrom* error in a jury instruction should be held to be harmless where the evidence so conclusively establishes the particular element that an appellate court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption.

*Francis v. Franklin*

Franklin was convicted of murder. He admitted the act of killing the victim, but he claimed accident, i.e., he denied that he intended to murder the victim. It is sufficient to state that there was significant evidence to support this contention.[2]

The trial judge charged the jury on the issue of intent as follows:

---

[1] An example of this is the upholding in *Johnson* of the defendant's sexual-assault conviction, on the ground that this is not a specific-intent crime, as to which the jury would have been influenced by the erroneous instruction.

[2] Franklin was a state prisoner who sought to escape custody while receiving dental care at a local dentist's office. Franklin seized a pistol and took the dentist's assistant hostage. They approached a local resident, and Franklin demanded his car, but he stated that he did not own one. Franklin did not harm the resident, but he proceeded with the dental assistant to the home of the victim. Franklin pounded on the front door, and when the victim appeared, Franklin pointed his pistol at the door and demanded the victim's car keys. The victim slammed the door, and the gun went off. The bullet traveled through the door into the victim's chest, killing him. A second bullet went through the door and into the ceiling. In the confusion, the dental assistant fled. Franklin did not attempt to stop her. He entered the victim's house and demanded the car keys from the victim's wife and subsequently from the victim's daughter. Although neither the wife nor the daughter provided him with the keys, he harmed neither of them. At trial, Franklin denied that he shot the victim intentionally or voluntarily. He claimed that the shots were fired in accidental response to the slamming of the door.

"(1) '(t)he acts of a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted' and (2) '(a) person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted.'" 471 U. S., supra at p. ___, 105 SC, supra at p. 1968.

A five-to-four majority of the Court in *Franklin* characterized this as a mandatory rebuttable presumption, as opposed to an irrebuttable or conclusive presumption such as that given in *Sandstrom*. Although the majority found the charge "less onerous" than the charge in *Sandstrom*, it found it "no less unconstitutional" because it "relieves the State of the affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding." Id. at pp. 1972-1973. The majority reached this conclusion notwithstanding the fact that the trial court, in another portion of the charge, instructed the jury that, *"there is no burden on the defendant to prove anything."* Id. at pp. 1981-1982 (Rehnquist, J., dissenting).

Citing *Cupp v. Naughten*, 414 U. S. 141 (94 SC 396, 38 LE2d 368) (1973), the majority did recognize that, "[t]he jury charge taken as a whole might have ·explained the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion." 105 SC, supra at p. 1973. However, the majority held that other portions of the charge, even the instruction that a person will not be presumed to act with criminal intention, did not dissipate the error. As to the issue of criminal intention, the trial court instructed the jury, " '[a] person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted . . ." Id. at p. 1974. On three occasions, the trial court also instructed the jury that, "it could not base a finding of any element of the offense on circumstantial evidence unless the evidence 'exclude(d) every other reasonable hypothesis, save that of the (accused's) guilt . . .' " Id. at p. 1979 (Powell, J., dissenting). In holding that these portions of the charge did not clarify the ambiguity in the challenged language, the Court reasoned:

"It may well be that this *'criminal* intention' instruction was not directed to the element of intent at all, but to another element of the Georgia crime of malice murder. The statutory definition of capital murder in Georgia requires malice aforethought. Ga. Code Ann. § 16-5-1 (1984) (formerly Ga. Code Ann. § 26-1101a (1978)). Under state

law malice aforethought comprises two elements: intent to kill and the absence of provocation or justification. See *Patterson v. State*, 239 Ga. 409, 416-417 238 SE2d 2, 8 (1977); *Lamb v. Jernigan*, 683 F2d 1332, 1337 (CA11 1982) (interpreting Ga. Code Ann. § 16-5-1), cert. denied, 460 U. S. 1024 (1983).[3] At another point in the charge in this case, the trial court, consistently with this understanding of Georgia law, instructed the jury that malice is 'the unlawful, deliberate intention to kill a human being without justification or mitigation or excuse.' . . .

"The statement '*criminal* intention may not be presumed' may well have been intended to instruct the jurors that they were not permitted to presume the absence of provocation or justification but that they could infer this conclusion from circumstantial evidence." 105 SC, supra at p. 1974.

And, the majority held that, "[e]ven if a reasonable juror could have understood the prohibition of presuming 'criminal intention' as applying to the element of intent, that instruction did no more than contradict the instruction in the immediately preceding sentence. A reasonable juror could easily have resolved the contradiction in the instruction by choosing to abide by the mandatory presumption and ignore the prohibition of presumption . . . Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." Id. at p. 1975.

Finally, the majority noted its approval of the Court of Appeals' holding that the *Sandstrom* error in the case could not be deemed harmless.

The thrust of the dissenting opinions, one of which was written by Justice Powell and another of which was written by Justice Rehnquist and concurred in by Chief Justice Burger and Justice O'Connor, was that the majority was incorrect in holding that the charge, when viewed as a whole, could have been understood by a reasonable juror

---

[3] In *Lamb* and in the case sub judice, the jury was also charged that, " '(m)alice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.' " In *Lamb*, it was held that this "shall be implied" language is "suggestive of a mandatory presumption, which might be interpreted either as conclusive or rebuttable." 683 F2d at p. 1340. Nonetheless, the court concluded that the instruction, taken as a whole, was not unconstitutionally burden-shifting, because it instructed the jury to find malice only where "all the circumstances of the killing show an abandoned and malignant heart." This instruction, said the court, "is really a directive to the jury that the finding of malice must often be based entirely on circumstantial evidence — that it is not entitled to refuse to find malice solely because direct evidence of malicious intent is lacking." Id. at p. 1340. Because of the trial court's instruction that "in order to warrant a conviction upon circumstantial evidence, the proven facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis, save that of the guilt of the accused[,]" id. at p. 1337, n. 8, the court also held that a reasonable juror could not have interpreted this portion of the malice instruction as reducing the prosecution's burden of proving beyond a reasonable doubt circumstances that indicate malice.

as burden-shifting. Justice Powell described the majority holding, that a reasonable juror might have interpreted the trial court's instruction on criminal intent as not directed to the element of intent at all, as a "strained interpretation" that is "neither logical nor justified." Id. at p. 1979 (Powell, J., dissenting). In Justice Rehnquist's words, this conclusion "defies belief" in view of the fact that this portion of the charge refers to "intent" and not to "justification or provocation" and in further view of the fact that at this point in the charge the jury had not been instructed on the two elements of malice. Id. at p. 1984 (Rehnquist, J., dissenting). And, as further pointed out by Justice Rehnquist, the trial court also charged the jury that there was no burden on the defendant to disprove malice.

*Facts of This Case*

In this case, the applicant was convicted of the murder of his grandfather, Archie Lane. The evidence showed that the applicant and the victim had shared a father-son relationship. However, approximately 18 months before the grandfather was killed, the applicant's grandmother died, and the applicant and the victim got into a serious squabble because the grandfather would not turn over to the applicant $3,000 in proceeds from a life insurance policy on the grandmother. Evidence was introduced showing that the applicant had made both verbal and written threats against his grandfather's life because of his grandfather's refusal to turn over the money, and he had confronted his grandfather with a shotgun. Eventually, the grandfather's house was burglarized and set on fire, and his corpse was found lying in the house. He had been beaten over the head at least 10 times with a blunt instrument. There was medical testimony that he had died from a combination of skull injuries and smoke inhalation.

Two statements made by the applicant were admitted in evidence at trial. In the first statement, the applicant admitted burglarizing the victim's house, but he denied even seeing the victim. In the second statement, the applicant admitted going to the victim's house with another man, Dennis Williams. However, in this statement the applicant claimed that although he knocked the victim down when the victim first entered the house, it was Dennis Williams who had beaten the victim with a tire tool and that he, the applicant had stopped the beating. However, Dennis Williams' wife testified that when the applicant and her husband came to her and her husband's house on the evening of the murder, the applicant was covered with blood while her husband was not. She further testified that the applicant later "went berserk and kept talking about killing his grandfather and how hard it was to kill him." *Williams v. State*, 250 Ga.,

supra at pp. 555-556.

Dennis Williams pleaded guilty to a charge of voluntary man-slaughter, but he did not testify at applicant's trial.

In this case, the trial court charged the jury, "A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted. . . ." The trial court also charged the jury that criminal intent is not to be presumed.

### Holding

Under *Franklin*, the charge in this case — that there is a rebuttable presumption that a person of sound mind and discretion intends the natural and probable consequences of his acts — was unconstitutionally burden-shifting, notwithstanding the additional charge that criminal intent is not presumed.

The question for decision is whether this error in the charge requires a reversal of the applicant's convictions.

The applicant's defense in this case was that although he participated in the burglary of the victim's home, and although he did hit the victim once, the infliction of the remaining injuries and the setting of the house on fire were all acts attributable solely to the applicant's accomplice. In our opinion, this defense raised the question of whether the applicant participated in the acts causing the victim's death, but did not create any material issue on the question of whether the applicant intended the consequences of his acts.[4] Under these circumstances, it is clear to us beyond a reasonable doubt that the error in the charge did not contribute to the verdict of guilty.

*Judgment affirmed. All the Justices concur.*

---

[4] In the applicant's direct appeal, he did argue, however, that the trial court erred in failing to instruct the jury concerning the holding in *Enmund v. Florida*, 458 U. S. 782 (102 SC 3368, 73 LE2d 1140) (1982). In the *Enmund* case, the evidence showed that Enmund drove the get-away car for his two accomplices, who robbed and murdered two elderly individuals who resided in a farm house in central Florida. However, there was no evidence that Enmund was present at the place where the murders occurred, and there was no evidence showing that murder was part of the criminal conspiracy. The Supreme Court reversed Enmund's death sentence for felony-murder, holding that the Eighth Amendment's cruel-and-unusual-punishment clause prohibits "imposition of the death penalty on one such as Enmund who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U. S. at p. 797. In the applicant's direct appeal, we rejected his argument that, under *Enmund*, the trial court erred "in failing to charge the jury that in order for the death penalty to be imposed the state must show that the defendant 'actually killed the deceased or intended or contemplated that the deceased's life would be taken.'" 250 Ga. at p. 563.

HILL, Chief Justice, concurring.

I write to emphasize that the charge at issue in this case created a mandatory but rebuttable presumption, as did the charge in issue in the recent decision of *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985), see 105 SC at 1977. In contrast, the charge at issue in *Connecticut v. Johnson*, 460 U. S. 73 (103 SC 969, 74 LE2d 823) (1983), created a mandatory conclusive presumption. This is significant because the plurality in *Connecticut v. Johnson*, supra, views a conclusive presumption on the issue of intent as the functional equivalent of a directed verdict on that issue. Id. 103 SC at 976. In contrast, while a mandatory rebuttable presumption is unconstitutional because it is burden-shifting, it is not the functional equivalent of a directed verdict. *Francis v. Franklin*, supra, 105 SC at 1973. For that reason, I conclude that even if a mandatory conclusive presumption is reversible error as a matter of law except for certain "rare situations" in which the reviewing court can be confident that the presumption did not play *any* role in the jury's verdict, *Connecticut v. Johnson*, supra, 103 SC at 977, a mandatory rebuttable presumption is a form of instructional error that should be analyzed for harmlessness under *Chapman v. California*, 368 U. S. 18 (87 SC 824, 17 LE2d 705) (1967).

Here the victim was beaten over the head with a blunt instrument at least 10 times, and his house was set on fire; the victim died from the combination of skull injuries and smoke inhalation. The disputed issue here was not whether the assailant intended to kill the victim, as in *Francis v. Franklin* and *Connecticut v. Johnson*, supra, but whether it was the defendant or his companion who inflicted the wounds and started the fire. The jury found the defendant guilty of the victim's murder, and there was ample evidence to support their verdict.

Under *Chapman v. California*, supra, constitutional error does not require reversal unless there is a reasonable possibility that it contributed to the conviction; put conversely, constitutional error does require reversal unless the reviewing court finds beyond a reasonable doubt that it did not contribute to the verdict. Having reviewed the evidence and the charge in this case, I am satisfied beyond a reasonable doubt that the complained of language as to intent did not contribute to Williams' conviction for murder.

DECIDED JANUARY 28, 1986.

*Buckman, Saul & Kiersh, Steven R. Kiersh*, for appellant.
*Michael J. Bowers, Attorney General, Paula K. Smith, Assistant*

*Attorney General,* for appellee.