**Brian DEWBERRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05-86-00626-CR.**

Court of Appeals of Texas, Dallas.

Aug. 4, 1987.

Rehearing Denied Sept. 25, 1987.

Gary A. Udashen, Dallas, for appellant.

John D. Nation, Dallas, for appellee.

Before DEVANY, STEWART and ROWE, JJ.

STEWART, Justice.

The jury found appellant guilty of murder and assessed punishment at 15 years' confinement in the Texas Department of Corrections. Appellant brings seven points of error. We affirm the judgment of the trial court.

The chief witnesses for the State were Debra Ann Weaver and Debra Sauls, both white. As prostitutes, they regularly worked by automobile the East Dallas area. They testified that they observed the following incidents while working on the evening of January 25, 1986.

Around 8 p.m. while driving on Carroll towards Ross, two black males that the witnesses recognized as being from the Bryan and Carroll neighborhood attracted their attention. The two males were sitting on a carwash parking lot, and one hollered, "Do you want to talk to us?" Neither Weaver nor Sauls could tell which of the two males spoke to them. They responded that they did not want to talk and drove on. Defense counsel queried why they avoided these particular individuals. The witnesses explained that they do not associate professionally with whites or blacks; rather, their clientele consisted primarily of hispanics.

Shortly after 9 p.m. of the same evening, the witnesses approached and stopped at the intersection of Ross and Carroll for a red light. Sauls was driving, and Weaver was sitting on the passenger side. Weaver described the intersection as fairly major with traffic and street lights. Sauls also described the corner as a major intersection with lights on all four corners. They noticed numerous people in the area. They also noticed the two black men who had hollered at them earlier that same evening beating up a white man. The white man was seated on the ground with knees bent and his hands over his head, attempting to cover his face. The black male later identified as Anthony Harris held a two-by-four board with both hands and repeatedly struck the victim, decedent, on the back of his neck, on his back, and on his arms. They described the other black male, later identified as appellant, as kicking the victim. Both testified that appellant wore a light brown stocking cap and that Harris wore a clear shower cap.

Both witnesses then heard appellant yell, "Get it." Harris then bent over the victim and picked something off the ground near decedent's waist. Appellant and Harris both jumped over a nearby railing and then ran across the car lot. Both witnesses said that Harris ran to one side of a red Firebird automobile and that appellant ran to the other side. Both witnesses said Harris

was shorter than appellant. Weaver described decedent as lying on the ground "twitching and flinching." Sauls described him as "jumping and flickering."

The two witnesses then sped up Ross Avenue and drew the attention of police officer Michael Carew, who drove immediately to the scene. When Carew and the two witnesses returned to the scene, decedent still lay flat on his back and twitched. Carew testified that no one else was nearby when he arrived and that decedent lay by himself. He described decedent as being in poor condition, his skin having a grayish pallor to it. Decedent lay in a pool of blood under his back. Carew saw a baseball cap, wallet, and loose papers lying near decedent. Carew searched the area for a board but found none.

An ambulance arrived and took decedent to the Baylor Hospital emergency room. Decedent was pronounced dead at 10:05 p.m. that same night.

On the next Friday, January 31, while driving up and down Bryan and Carroll, the witnesses again saw Harris and appellant together, walking on Holly towards Bryan. The witnesses then went looking for Officer Carew but instead found Officer Spruce. At the corner of Bryan and Annex, one street over from Holly, they found Harris and appellant. Officer Spruce detained both men. Weaver described appellant as wearing the same brown stocking cap.

Weaver testified that she recognized appellant as one of a crowd of persons who commonly hang out on the streets in East Dallas. She said that she would see appellant almost every day, usually around Bryan and Grigsby and Bryan and Fitzhugh, between the 4700 and 4900 blocks of Bryan. Appellant testified that he lived at 4907 Bryan Street. Sauls described appellant as hanging out around the 4700 to 4800 block of Bryan, between Grigsby and Annex.

Both witnesses were uncertain initially in their identification of Harris. On the night he was picked up (January 31), Harris' hair was shorter than they remembered it. The police released Harris. Before trial, Sauls learned that Harris was arranging to have Weaver and her "messed off so [they] couldn't come to trial." At trial, both witnesses were certain Harris was the male with appellant on the night of January 25.

Neither witness ever wavered in her identification of appellant. Both witnesses denied seeing any knife or any cutting or stabbing.

Dr. Graeme Dowling, an associate pathologist with the Dallas County Medical Examiner's Office, performed an autopsy on decedent on January 27, 1986. He testified that a stab wound of the back of the chest was the cause of death. He explained that "cause of death" is defined as the injury or disease that ultimately leads to death. "In this case that's the stab wound. The mechanism of death is bleeding."

The decedent was identified as Michael James Ashline on the basis of fingerprint comparisons. Ashline was a twenty-seven year old transient about whom little was known. The police department was unsuccessful in locating any friends or relatives. The police turned his body over to Southwestern Medical School for use as a cadaver.

Appellant testified that he had never seen the decedent, that he had never seen the two witnesses, and that he had nothing to do with the killing of decedent. Appellant denied owning a brown hat but admitted owning a blue hat. Appellant said he spent the evening in question outside his apartment complex listening to his radio with Ronnie Martinez. He denied being with Anthony Harris on the evening of the 25th of January. Defense counsel issued a subpoena for Ronnie Martinez, but he was never served. Outside the presence of the jury, the parties learned that Martinez knew nothing of an exculpatory nature to help appellant. Appellant's mother testified that he was just outside their apartment that evening because she could hear his radio playing outside.

■ Appellant's first point of error argues that the evidence was insufficient to support the guilty verdict. The charge in-

structed the jury to find appellant guilty if they found that he caused the death of decedent by cutting him with an object. When the means by which an assault or homicide is committed is alleged, the State has the burden of proving that allegation. *Windham v. State*, 638 S.W.2d 486 (Tex. Crim.App.1982); *Holloway v. State*, 168 Tex.Crim. 264, 324 S.W.2d 886 (1959); *Hardrick v. State*, 142 Tex.Crim. 520, 155 S.W. 2d 367 (1941). Appellant contends that there was no evidence from any source that appellant or his companion had a knife or a sharp object during the attack on the complainant. Appellant argues that this variance requires an acquittal.

The State replies that appellant mistakenly relies upon the assumption that because there is no direct evidence of cutting, the proof is insufficient on the manner and means of death. The State contends that the evidence is sufficient if it circumstantially established, at the very least, that appellant aided and encouraged his codefendant, Anthony Harris, in cutting the decedent. The State points out that the trial court charged the jury on the law of parties. TEX.PENAL CODE § 7.02(a)(2) (Vernon 1974). The State emphasizes that each fact need not point directly and independently to the guilt of the accused so long as the cumulative force of all incriminating circumstances is sufficient to warrant a conclusion of guilt. *Vaughn v. State*, 607 S.W.2d 914, 921 (Tex.Crim.App. 1980).

■ In evaluating the sufficiency of the evidence, the standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Carlsen v. State*, 654 S.W.2d 444, 448 (Tex.Crim.App.1983). If the State's evidence supports an inference other than a finding of the essential elements of the crime, then no trier of fact could rationally find the defendant guilty beyond a reasonable doubt, and this is true regardless of whether the evidence is direct or circumstantial. *Carlsen*, 654 S.W.2d at 449–50.

■ "'Under an indictment charging murder, ... which alleges the means, a conviction will not be sustained even for simple assault unless the means alleged is substantially proved.'" *Hardrick*, 155 S.W.2d at 367 (quoting Branch's Annotated Texas Penal Code). In *Hardrick*, the indictment alleged that appellant struck complainant with a gun. The evidence showed that appellant struck complainant with the stock of a gun that had its barrel broken off; consequently, the stock was the equivalent of a piece of wood. Because the evidence excluded the allegation in the indictment, the court held that the trial court should have instructed a verdict of not guilty at the conclusion of the evidence. *Hardrick*, 155 S.W.2d at 367.

In *Windham*, the indictment alleged that appellant attempted to cause the death of complainant by shooting at her with a gun. The evidence showed that appellant pointed the gun at complainant, pulled the trigger, and the gun merely clicked. The definition of "shoot" requires some projectile being discharged. This evidence constituted a fatal variance between what was pled and proved by the State. *Windham*, 638 S.W. 2d at 487–88.

In both cases, the evidence excluded the allegation in the indictment. Because both witnesses testified that they saw no knife and no cutting or stabbing, appellant contends a variance between what was pled and proved exists. We disagree. The evidence shows that the witnesses arrived at the scene while the assault was in progress; therefore, the cutting could have occurred before they came upon the scene. Furthermore, the board with which Harris allegedly struck decedent was never recovered. It could have contained sharp protruding objects. In addition, Officer Carew arrived moments after appellant and Harris fled and found decedent alone. Most importantly, although there is no direct evidence that appellant or Harris cut decedent, given the circumstances, the jury could infer circumstantially that one or the other cut decedent at some point during the assault. Unlike in *Hardrick* and *Windham*, the evidence here does not exclude the allegation made by the State in the

indictment. When viewing the evidence in the light most favorable to the prosecution, we hold that any rational trier of fact could find beyond a reasonable doubt that either appellant or Harris cut decedent. Appellant's first point of error is overruled.

In points of error two and three, appellant contends that the trial court erred in instructing the jury during the punishment phase on the law of parole and good conduct time because it violated the separation of powers provision of the Texas Constitution and because it violates appellant's due process rights under the United States and Texas Constitutions, respectively. This Court has previously decided these contentions adversely to appellant. *See Rose v. State*, 724 S.W.2d 832 (Tex.App.—Dallas 1986, pet. granted) (en banc); *Joslin v. State*, 722 S.W.2d 725 (Tex.App.—Dallas 1986, pet. granted). Appellant's second and third points of error are overruled.

In his fourth point of error, appellant argues that the trial court erred in overruling his objections to the seating of the jury because of the State's improper use of its peremptory strikes to eliminate blacks from the jury. The record reflects that appellant is black, the victim of the offense was white, and both of the State's primary witnesses were white. Appellant and the State were each allotted ten peremptory strikes following the voir dire of the jury panel. The State peremptorily struck five of the six potential black venirepersons and used its remaining five strikes on whites. Appellant peremptorily struck ten white venirepersons. The jury consisted of eleven white jurors and one black juror.

Appellant relies upon *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). Voir dire was performed before *Batson* was decided. However, *Batson*'s requirements apply retroactively to cases pending on direct appeal or not yet final. *Griffith v. Kentucky*, 479 U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). We have previously abated this proceeding for a *Batson* hearing. The results of that hearing are before us.

Under *Batson*, in order to establish a prima facie case of purposeful discrimination, a defendant must show:

1. he was a member of a cognizable racial group;

2. the prosecutor had exercised peremptory challenges to remove from the venire members of the defendant's race (peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate); and

3. the facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen on account of their race.

*Henry v. State*, 729 S.W.2d 732, 734 (Tex. Crim.App., 1987). If the defendant raises an inference of purposeful discrimination through the State's use of its peremptory strikes, and the trial court determines that a prima facie case of discrimination exists, then the burden shifts to the prosecutor, who must come forward with a neutral explanation for the challenges. The trial court must then determine whether despite the State's explanation, the defendant has established purposeful discrimination. *Keeton v. State*, 724 S.W.2d 58, 64 No. 69,639, slip op. at 11 (Tex.Crim.App., April 15, 1987) (op. on reh'g).

The trial court's conclusions of law one and two provide that (1) appellant is a member of a cognizable racial group and (2) the State exercised peremptory challenges to remove from the venire some members of appellant's racial group. In findings of fact seventeen through nineteen, the trial judge found that he observed at all times the jury selection process; that he observed nothing in the prosecutor's actions, mannerisms, comments, or questions that indicated that he was favoring white jurors over black jurors or that he had a mind to discriminate against black jurors; and that he observed the general pattern of the prosecutor's statements, questions, and strikes and did not observe a deviation from the pattern as to black jurors. The trial court's third conclusion of law provides: "No facts or other relevant circumstances raised an inference that the

State used peremptory challenges to exclude, from the panel, members of [appellant's] racial group solely on account of their race, or on account of [appellant's] race."

Consequently, the trial court has ruled that appellant has met only two of the three requirements necessary to establish a prima facie case of purposeful discrimination. Appellant contends that the court's finding in its third conclusion of law is clearly erroneous. Only if appellant is correct may we sustain his point of error.

■ The trial court's findings are crucial and are entitled to great deference. *Batson,* 106 S.Ct. at 1724; *Grady v. State,* 730 S.W.2d 191, 195 (Tex.App.—Dallas 1987, leave to file late pet. granted) (appellant has until 8/11/87 to file pet.). The trial court's findings are not to be disturbed unless clearly erroneous. *Yarbrough v. State,* 732 S.W.2d 86, 91 (Tex.App.—Dallas, 1987, pet filed).

■ Appellant has not attacked the trial court's findings of fact seventeen through nineteen. Based upon these findings of fact, we cannot say that the trial court's conclusion that the facts and other relevant circumstances failed to raise an inference of purposeful discrimination is clearly erroneous. We are not prepared to say that the fact that the prosecutor used five of his ten strikes on blacks or the fact that only one black served on the jury is, absent other facts and circumstances, sufficient to establish a prima facie case of purposeful discrimination. Accordingly, appellant's fourth point of error is overruled.

■ Appellant argues in his fifth point of error that the trial court erred in denying him the right to cross-examine the prosecutor regarding his reasons for using his peremptory strikes. Because appellant failed to establish a prima facie case, the burden never shifted to the prosecutor to come forward with neutral explanations; consequently, the prosecutor provided no evidence against which appellant could cross-examine. Assuming appellant asserts that he has the right to cross-examine the prosecutor as part of his prima facie

case, we overrule this contention. Literally anyone who witnessed the voir dire could testify as to a defendant's belonging to a racial group, as to the prosecutor's striking venire persons of the same racial group, and as to the other facts and circumstances that may lead to an inference of purposeful discrimination. The rule set out in *Batson* does not require the prosecutor to actually justify his strikes with explanations until the trial court first finds a prima facie case of discrimination. Accordingly, appellant does not have the right to cross-examine the prosecutor as part of his prima facie case.

■ In his sixth point of error, appellant argues that the trial court erred in failing to instruct the jury on the lesser included offense of aggravated assault. Appellant contends that aggravated assault has already been found to be a lesser included offense of murder. *Chew v. State,* 639 S.W.2d 27 (Tex.App.—Dallas 1982, no pet.); *Coit v. State,* 629 S.W.2d 263 (Tex.App.—Dallas 1982, pet. ref'd). We disagree. Although aggravated assault *may* be a lesser included offense, it is not *necessarily* a lesser included offense.

■ A trial court is not required to submit an instruction on a lesser included offense unless there is some evidence in the record that the defendant, if guilty at all, is guilty only of the lesser included offense. *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App.1981) (op. on reh'g). Appellant testified that he had nothing to do with the murder of decedent and that he was outside his mother's apartment on the evening of the murder. If true, appellant would have been guilty of no offense at all. Because he was either guilty of the offense charged or of no offense, a charge on the lesser included offense was not necessary. *Thomas v. State,* 578 S.W.2d 691, 698 (Tex. Crim.App.1979); *Eldred v. State,* 578 S.W. 2d 721, 723–24 (Tex.Crim.App.1979). Appellant's sixth point of error is overruled.

■ In his seventh point of error, appellant maintains that the trial court erred in refusing to grant his pretrial motion to authorize expenses for an expert witness.

The motion requested the court to authorize expenses of $1,081 in order for appellant to retain Dr. John C. Brigham of Florida State University to testify concerning research into instances of interracial identification and likelihood of misidentification when persons of different races identify someone after a crime. Appellant was represented by court-appointed counsel and did not have the funds to pay Dr. Brigham to come to Dallas to testify.

Under article 26.05(d) of the Texas Code of Criminal Procedure, with court approval, a counsel appointed to represent an indigent defendant can spend a reasonable fee not to exceed $500 for investigation and expert testimony. Appellant contends that if article 26.05(d) is interpreted strictly to not allow any expenses above $500, then it is blatantly unconstitutional, violates due process, and denies equal protection and effective assistance of counsel. Appellant maintains that if expert assistance is available to a defendant who can afford it, these constitutional provisions require that it be made available to indigent defendants. Appellant relies upon *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Appellant further argues that the Texas Court of Criminal Appeals has implicitly interpreted 26.05(d) as allowing some additional expenses above $500 if harm to the defendant is shown by the failure to provide additional funds. *Freeman v. State*, 556 S.W.2d 287 (Tex.Crim.App.1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978); *Cherry v. State*, 488 S.W.2d 744, 753 (Tex.Crim.App.1972), *cert. denied*, 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973).[1]

Appellant contends that harm has occurred because the entire case against appellant was based upon his identification by two white witnesses as the person who committed the offense. Appellant maintains that any testimony that tends to show that eyewitness identification by persons of different races is suspect would obviously aid his defense.

The State replies that the appointment of an expert witness lies within the sound discretion of the trial court, and absent a showing of harm, no abuse of discretion would be found. *Quin v. State*, 608 S.W.2d 937, 938 (Tex.Crim.App.1980); *see also Cadd v. State*, 587 S.W.2d 736, 739 (Tex.Crim.App.1979). The State then argues that there was no substantial likelihood of misidentification that would have justified expert testimony of this sort. The State contends the evidence establishes the contrary. Both witnesses know appellant by sight because they regularly work the community in which the offense occurred. Both witnesses live with black males and presumably would not be subject to any defects in recognition ability, because they frequently associate with black persons. We agree that the trial court properly exercised its discretion.

Appellant incorrectly asserts that *Ake v. Oklahoma* stands for the proposition that the constitution requires the State to provide the same expert assistance for an indigent that a wealthier defendant could afford. In *Ake*, defendant's sole defense was insanity, yet the Oklahoma trial court refused to provide a psychiatrist to examine defendant and to testify as to his sanity. The court held that defendant's sanity was a significant factor at trial. *Ake*, 470 U.S. at 86, 105 S.Ct. at 1097. The court noted that the determination of sanity is inevitably complex and foreign to jurors and that the testimony of psychiatrists can be crucial and a virtual necessity for an insanity plea to have any chance of success. *Id.* at 81, 105 S.Ct. 1095. Furthermore, the court noted that without a psychiatrist to assist defendant, the risk of an inaccurate resolution of the sanity issue was extremely high. *Id.* at 82, 105 S.Ct. at 1095.

In the present case, whether cross-racial identification is more inclined to be mistaken is not a significant factor. The identification of a defendant is neither complex nor foreign to jurors, and the testimony of appellant's expert witness cannot be said to

---

1. Habeas corpus proceedings *sub nom. Cherry v. Texas*, 361 F.Supp. 1284 (N.D.Tex.1973), *judgm't vacated & remanded, Cherry v. Estelle*, 507 F.2d 242 (5th Cir.1975), *relief denied, Cherry v. Estelle*, 424 F.Supp. 548 (N.D.Tex.1976).

be crucial or a virtual necessity. The risk of an inaccurate resolution of the identification of appellant is not extremely high due to Dr. Brigham's failure to testify. Furthermore, the witnesses recognized appellant by sight as a familiar face in the community. Appellant has failed to show any harm by the failure to provide the funds. Appellant's seventh point of error is overruled. *See Freeman*, 556 S.W.2d at 303; *Cherry*, 488 S.W.2d at 753.

The judgment is affirmed.