## 75967. POWELL v. THE STATE.
(372 SE2d 234)

McMURRAY, Presiding Judge.

Defendant appealed his 1985 conviction for voluntary manslaughter and, in response to his contention that the State's use of peremptory challenges was discriminatory, this court remanded with direction for an evidentiary hearing in accordance with *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69). (For this court's previous holding and statement of pertinent facts, see *Powell v. State*, 182 Ga. App. 123 (355 SE2d 72).)

Evidence at the *Batson* hearing showed that the State used 9 of its 10 peremptory challenges to strike 9 of the 12 prospective jurors who were black. Three blacks were on the jury ultimately selected for the trial of the case sub judice. Thus, the proportion of blacks on the selected jury (25 percent) was slightly less than the proportion of blacks on the panel (28.57 percent). At the *Batson* hearing, defendant argued that the State had discriminated against blacks in the jury selection process. The trial court rejected this argument and refused to make a ruling as to whether a prima facie showing of discrimination by the State was present. However, in an abundance of caution, the trial court required the State to give the reasons for its peremptory strikes. After the State complied, defendant requested cross-examination of the State's attorney. This request was denied and defendant offered nothing in rebuttal. Subsequently, the trial court entered an order finding that each of the State's peremptory challenges were "racially neutral." Defendant now appeals, asserting error as to the trial court's rulings at the *Batson* hearing and reasserting enumerations of error that were previously raised but were not considered by this court. See *Powell v. State*, 182 Ga. App. 123 (4), supra. *Held*:

1. In his third enumeration of error, defendant contends the trial court erred in "failing to make a determination and finding as to whether [he] had established a prima facie case of purposeful discrimination by the State in jury selection as contemplated by *Batson v. Kentucky*." We do not agree. Since the trial court proceeded with the second phase of the *Batson* hearing, requiring the State to give its reasons for its peremptory strikes and ruling on the State's motivation for said strikes, a determination of prima facie discrimination was unnecessary. See *Williams v. State*, 258 Ga. 80, 81, n. 2 (365 SE2d 408).

2. We next consider defendant's contention that the trial court erred in refusing to allow him to cross-examine the State's attorney during the *Batson* hearing.

In *Batson*, the United States Supreme Court held that "[o]nce the defendant makes the requisite showing [of discrimination by the

State in the jury selection process], the burden shifts to the State to *explain* adequately the racial exclusion. *Alexander v. Louisiana*, 405 U. S. at 632, [31 LE2d 536, 92 SC 1221]. [Emphasis supplied.]" *Batson v. Kentucky*, 476 U. S. 79 at 94 (106 SC 1712, 90 LE2d 69, 86). We find no directive in *Batson* which requires the State's attorney to further explain his conduct to defendant on cross-examination (of the State's attorney), nor do we find such authority in Georgia. In response to defense counsel's argument regarding defendant's constitutional right to confrontation through cross-examination, we observe that the State's attorney was not testifying as a witness against defendant, but was "explaining" his conduct as an officer of the court. Under such circumstances, we find that the trial court did not err in refusing to allow defendant's attorney to cross-examine the State's attorney.

3. Turning now to defendant's contention that the trial court erred in finding that the State's peremptory challenges were "racially neutral," we reject defendant's argument that the explanations given by the State at the *Batson* hearing were unbelievable because they were inconsistent with the explanations given at trial. After examining the trial transcript and the transcript of the *Batson* hearing, we find the State merely expanded and clarified its reasons for challenging black members of the venire. See *Evans v. State*, 183 Ga. App. 436, 439 (3) (359 SE2d 174). Consequently, " 'giving great deference' (90 LE2d at 89, n. 21) to the trial court's conclusion that the State's peremptory challenges were not purposefully discriminatory, we cannot say that the trial court's finding was clearly erroneous. See *United States v. Mathews*, 803 F2d 325 (7th Cir. 1986)." *Evans v. State*, 183 Ga. App. 436 (3), supra. Compare *Gamble v. State*, 257 Ga. 325, 326 (5) (357 SE2d 792). Defendant's first, second and fifth enumerations of error are without merit.

4. Next, defendant challenges the trial court's charge that: "[t]he law infers that a person intends to accomplish the natural and probable consequences of his acts and if a person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used and thereby causes the death of a human being the law infers the intent to kill. These inferences may be rebutted however." Defendant contends that this charge falls within the proscription of *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39), and *Francis v. Franklin*, 471 U. S. 307 (105 SC 1965, 85 LE2d 344).

In *Hosch v. State*, 246 Ga. 417, 419 (3) (271 SE2d 817), the Supreme Court disapproved the phrase "the law presumes" in the deadly weapon charge; and, more recently, in *Williams v. Kemp*, 255 Ga. 380, 388 (338 SE2d 669) (1986), the Supreme Court found constitutionally infirm a similar charge on intent, notwithstanding the fact

that an additional charge that such a presumption is rebuttable was given.[1] From this perspective, defendant in the case sub judice argues that the trial court's substitution of the term "infers" in lieu of the term "presumes" did not render benign the otherwise unconstitutionally burden-shifting charge. We agree.

To "infer" is "[t]o derive by reasoning or by implication; to conclude from facts or premises; to accept or derive as a consequence, conclusion or probability." Webster's New Intl. Dictionary, (2d ed.), p. 1273, n. 2. The law does not draw "conclusions" as to intent or other factual matters. Factual decisions and conclusions are matters that belong exclusively to the province of the jury. Consequently, in the case sub judice, when the trial court directed the jury to infer an essential element of the crime and that the inference was rebuttable, it unconstitutionally relieved " 'the State of the affirmative burden of persuasion on the [inferred] element by instructing the jury that it must find the [inferred] element unless the defendant [persuaded] the jury not to make such a finding.' [Cit.]" *Williams v. Kemp*, 255 Ga. 380, 385, supra. Further, we have reviewed the trial court's general instructions as to the State's burden of proof and the defendant's presumption of innocence and we find that they do not erase the error in the challenged portion of the instruction. Nor does the more specific instruction preceding the challenged charge — "A person will not be inferred to act with criminal intent but the jury may find intent, or the absence of intent, from a consideration of the words, demeanor, motive and other circumstances connected with the act for which the defendant is being tried," — provide a sufficient explanation of the defective instruction. "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Francis v. Franklin*, 471 U. S. 307, 322, supra.

Accordingly, "[b]ecause a reasonable juror could have understood the challenged portions of the jury instruction in [the case sub judice] as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the crucial element of intent, and because the charge read as a whole does not explain or cure the error, we hold that the jury charge does not comport with the requirements of the Due Process Clause." *Francis v. Franklin*, 471 U. S. 307, 325, supra. Compare *Catchings v. State*, 256 Ga. 241, 248 (11) (347 SE2d 572); *Worth v. State*, 179 Ga. App. 207, 209 (3) (346 SE2d 82), and cites.

---

[1] The Supreme Court in *Williams v. Kemp*, 255 Ga. 380, supra, held that this error did not require a reversal as the defendant's defense "did not create any material issue on the question of whether [that defendant] intended the consequences of his acts."

Since the challenged jury charge was erroneous, the question remains whether it was also harmless. "The court in *Davis v. Kemp*, [752 F2d 1515 (11th Cir. 1985)], held that the harmless error doctrine may be applicable to a *Sandstrom* error, if the court can say 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' 752 F2d at 1521 n. 7 (*quoting Chapman v. California*, 386 U. S. 18, 87 SC 824, 17 LE2d 705 (1967)). The *Davis* court identified two circumstances under which a *Sandstrom* error could be harmless beyond a reasonable doubt: (1) where the instruction applied to an element of the crime not at issue at the trial or (2) where evidence of guilt was 'overwhelming.' 752 F2d at 1521. In that case, the court found that the error perpetrated by the instruction was harmless, because the defendant, by offering an alibi rather than a *mens rea* defense, had taken intent out of issue." *Carter v. Montgomery*, 769 F2d 1537, 1541 (11th Cir. 1985).

In the case sub judice, although defendant admitted that he shot the victim, he testified that he intended "to just stop [the victim] and divert him from what he was doing." He further testified that he did not intend to kill the victim. This testimony not only placed the element of intent in issue, "but substantially reduces the extent to which evidence against the defendant can be considered to be 'overwhelming.' In *Brooks* [*v. Kemp*, 762 F2d 1383 (11th Cir. 1985),] virtually the only evidence offered in the suspect's defense was his own statement that the shooting had been an accident; yet the court held that this was sufficient to put intent in issue and prevent the evidence against the defendant from being considered 'overwhelming.' Accordingly, the court held that the *Sandstrom* error committed by the trial judge in instructing the jury on the issue of intent was not harmless." *Carter v. Montgomery*, 769 F2d 1537, 1541, supra.

In the case sub judice, considering defendant's testimony that he did not intend to use deadly force in order to "stop" defendant "from what he was doing" and considering the heated circumstances of the confrontation, in which defendant and the victim exchanged violent and threatening words, we cannot say that the evidence was "overwhelming" with regard to defendant's intent to kill the victim. Consequently, since the trial court's erroneous charge completely eliminated defendant's defense of lack of intent to use deadly force in self-defense, we must reverse defendant's conviction of the crime of voluntary manslaughter. *Trenor v. State*, 252 Ga. 264, 265 (3) (313 SE2d 482). See *Drake v. Kemp*, 762 F2d 1449 (11th Cir. 1985), and *Thomas v. Kemp*, 766 F2d 452 (11th Cir. 1985).

5. It is unlikely that defendant's remaining challenge to the trial court's jury instruction will reoccur upon retrial. Consequently, it is unnecessary to consider this enumeration of error.

*Judgment reversed. Benham, J., concurs and also concurs spe-*

*cially. Pope, J., concurs specially.*

POPE, Judge, concurring specially.

I agree that in this case the trial court did not err in refusing to allow defendant to cross-examine the prosecutor during the *Batson* hearing. This is because, even though the trial court never expressly ruled on whether a prima facie case of discriminatory intent had been established, the record shows a prima facie case, in fact, was not established. Compare *Gamble v. State*, 257 Ga. 325 (3) (357 SE2d 792) (1987). See generally *Aldridge v. State*, 258 Ga. 75 (4) (365 SE2d 111) (1988). A defendant does not have the right to cross-examine the prosecutor as part of his prima facie case. See *Dewberry v. State*, 743 SW2d 260, 266 (Tex. App. 1987). Once the defendant has shown he is a member of a racially cognizable group and that the prosecutor used peremptory strikes to remove members of this group from the jury, the remaining facts to establish an inference of racially discriminatory motivation for those strikes may be established from "other relevant circumstances," such as facts appearing in the record. See *Aldridge v. State*, supra. The testimony of the prosecuting attorney should not be necessary to establish a prima facie case. However, once a prima facie case is established, the testimony of the prosecuting attorney concerning his reasons for making the strikes is relevant. I do not agree with the implication of Division 2 of the majority opinion that a defendant would never have the right to cross-examine the prosecutor. Once a prima facie case of discriminatory intent is established and the prosecuting attorney is called to explain the reasons for each peremptory strike, then the very purpose of the *Batson* hearing requires the defendant be permitted to cross-examine the prosecutor in order to challenge his explanation. Cf. *Daniels v. Texas*, __ SW2d __ (no. 12-86-00268-CR, Tex. App., April 26, 1988) and *Cliff v. Alabama*, 518 S2d 786 (Ala. Crim. App. 1987) (in which the prosecuting attorney was cross-examined by defendant at the *Batson* hearing).

I am authorized to state that Judge Benham joins in this special concurrence.

DECIDED JUNE 14, 1988 — REHEARING DENIED JUNE 27, 1988 — REHEARING DISMISSED JULY 5, 1988 — REHEARING DENIED JULY 20, 1988 — ■

*W. Washington Larsen, Jr., Celia Larsen*, for appellant.
*James L. Wiggins, District Attorney, Michael T. Solis, Assistant*

*District Attorney*, for appellee.