33067. GREEN *v.* THE STATE.

Decided September 19, 1950.

*Aaron Kravitch,* for plaintiff in error.

*Andrew J. Ryan, Solicitor-General, Sylvan Garfunkel, Herman Coolidge,* contra.

MacINTYRE, P. J. 1. The only evidence bearing directly upon the alleged assault with intent to rape was that given by the prosecutrix, who testified: "I am ten years old; I go to school; I do not go to Sunday school; I go to church sometimes; I know what it means to tell the truth; when you hold up your hand you are supposed to tell the truth; I don't know what happens to people who do not tell the truth. (Examination by the court.) I know you go to jail if you do not tell the truth. I know that man, Leslie Green, there; my mother and father know him; my house is at 519 Guerard Street ,in Savannah, Chatham County, State of Georgia. Leslie Green came to my house one night last October, around 9:30, and asked for my mamma and papa; my mother was then to his shop on Walker Lane, I think; I don't know how far that is from my house; I don't know where my daddy was; he was not at home when Leslie Green came there; when Green first came in, he asked if my mamma was home and I told him 'No'; he asked if my daddy was at home and I told him 'No, sir.' At that time I was in the bed and he was standing in the front room; the bed was right by the front room, and I was talking to him from the bed. He asked me if he told me something I would tell nobody; I told him I didn't understand; I told him I wasn't studying him. Then he came in the bed and unbuttoned his pants; he had taken the lamp out of the room and put it in the dining room; then he come in there and tried to make me turn over; I was on my stomach. I hollered and he hit me in my back; he had off his pants on the side of the bed; that's when I hollered; then Pearley Mae walked in and caught him with his pants off; Pearley Mae Jones was going with him. He walked out of the door, and she said she didn't want anything else to do with him; he called her and she went down the street, and then he went around the corner; Pearley Mae told her cousin and her cousin told Mamma and Mamma came on home. I told my mother what had happened; I remember being in your office [the solicitor's] this morning, and Pearley Mae said she didn't want anything more to with him. Pearley Mae didn't say anything to that, but she walked on out; Pearley Mae said this morning he was in the dining

room asking me where my daddy was when she came in; she told you she didn't catch him with his pants down; she is wrong; she did come in and catch him." On cross-examination, the prosecutrix testified: "Pearley Mae is my cousin; Pearley Mae's little girl was in the same room with me that night; she was in bed with me then; also in bed with me were my three sisters; one of my sisters is three years old, one is a year and five months old, and the other one is five years old; Pearley Mae's little girl is eight years old; her name is Shirley Ann Thomas; Shirley [Pearley?] Mae said she thought Mamma was asleep, and she came in to scare her. When she came in, he [the defendant] jumped up out of the bed and started pulling on his pants. Pearley Mae was working that day, and she would leave her little girl with us while she worked; she came to get her little girl and take her home."

In her testimony Lizzie Williams, the mother of the prosecutrix, related that Cora Belle Jones told her what Pearley Mae had told Cora Belle, and that she (the mother) had gone home and the prosecutrix complained that the defendant had been there "bothering her," and she called the police. The policeman who had taken the defendant in charge after his arrest stated that he took the defendant to the home of the prosecutrix and she made the complaint to him.

In his statement to the jury, the defendant admitted his presence in the prosecutrix's home on the night in question, and admitted that he had spoken to her, but denied that he had assaulted her. He explained his presence there as having gone there to purchase whisky from the prosecutrix's father. A policeman, testifying in behalf of the defendant, swore that he had arrested the father of the prosecutrix several times for dealing in unstamped whisky.

The evidence of the prosecutrix alone was sufficient to support the verdict in this case (*Atkins* v. *State*, 29 *Ga. App.* 255 (2), 115 S. E. 35, and citations); and if the jury believed the prosecutrix, as it evidently did, all the elements of an assault with intent to rape were present. There was an assault. The defendant endeavored to make the prosecutrix, who was lying on her stomach, turn over on her back, and when she "hollered" struck her in the back. There was evidence sufficient to author-

ize the jury to infer an intent to rape. The defendant was sitting on the side of the bed and had removed his trousers, and when a cousin entered the room he leaped from the bed and began putting on his trousers. See *Davis* v. *State*, 46 *Ga. App.* 732 (169 S. E. 203); *Jones* v. *State*, 46 *Ga. App.* 679 (169 S. E. 46); *Parker* v. *State*, 35 *Ga.* 263; *Sharpe* v. *State*, 48 *Ga.* 16; *Darden* v. *State*, 97 *Ga.* 407 (25 S. E. 676); *Ware* v. *State*, 67 *Ga.* 349. It was unnecessary to prove a purpose to carry into effect the intent with force and against the consent of the female, as the female in question was only ten years of age. See *Smith* v. *State*, 192 *Ga.* 713 (16 S. E. 2d, 543), and citations.

2. Special ground 3 is not generally insisted upon or argued in the brief of counsel for the defendant and is treated as abandoned.

3. In special ground 2 error is assigned upon the following charge of the court: "Now, gentlemen, assault with intent to rape is assault; that is, an act of violence towards the person alleged by which he seeks to accomplish the act of carnal knowledge." The error alleged is that the court in connection therewith did not point out to the jury what constituted an intent to rape, and left the jury wavering and uncertain as to how to determine the guilt of the accused. We think that the court in the excerpt complained of, in which he defined an assault with intent to rape, made it sufficiently clear to the jury that an intent to rape consisted of an intent to accomplish an act of carnal knowledge; and if an elaboration was desired upon this point, it should have been requested.

4. Special ground 1 assigns error upon the failure of the court in its charge "to explain to the jury that mere preparatory acts are insufficient to constitute an attempt; that, in order to be guilty of an attempt, the defendant must in addition to preparatory acts commit some act towards the crime itself," and "the jury was not sufficiently informed of the distinction between mere preparatory acts and the actual attempt by the defendant to commit the offense itself." The defendant was indicted, it is to be remembered, for assault with intent to rape. There is, of course, no such offense as an *attempt* to commit an *assault with intent* to rape. *Wilson* v. *State*, 53 *Ga.* 205, 206; *Alexander* v. *State*, 66 *Ga. App.* 709, 711 (19 S. E. 2d, 353), and citations.

In charging the jury the court defined an assault to commit rape and also charged upon the presumption of the defendant's innocence, and surely the jury comprehended that, if the defendant had done nothing toward the accomplishment of the offense charged, he was to be acquitted. In the absence of a request to charge upon the distinction between preparatory acts and the "actual attempt" (assault with intent to rape), the error assigned, under the facts of this case, is without merit.

It follows from what has been held in the foregoing divisions of the opinion that the court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*