## A89A0602. PATTERSON v. THE STATE.
(385 SE2d 311)

BIRDSONG, Judge.
Patterson appeals his convictions of the aggravated battery of Johnny Marlowe (Count I) and criminal attempt to commit aggravated assault on Dennis Stiles (Count II). His convictions arose from a shooting incident following an afternoon of drinking "white liquor" at a local swimming hole.

The night before, Dennis Stiles visited Patterson's home and spent the evening drinking and arguing. While Patterson does not agree entirely with the latter characterization, at some point in the evening Stiles felt that the best thing was to leave. At Patterson's

urging, Stiles changed his mind and spent the night at Patterson's house.

The next day Patterson and Stiles went their separate ways for a time but in the afternoon Patterson, with others, went to the swimming hole where they found Stiles and others, including Johnny Marlowe. Patterson, Stiles, and Marlowe went downstream away from the main group and drank white liquor. According to Stiles and Marlowe, Patterson continued his argument with Stiles. Patterson recalled, however, that Stiles continued to argue, not Patterson. After the others left the area, Stiles passed out on the stream bank, and Patterson and Marlowe went back to Patterson's car.

According to Marlowe, they went there to smoke marijuana. Patterson says, however, that he went to his car to get his .22 caliber pistol so that he could fire a warning shot at Stiles to keep him from wanting to fight.

In Marlowe's version of the events at the car, he saw Patterson standing next to the car near the closed driver's door. Patterson's wife and children were inside the car, and Patterson and his wife were talking loudly. Marlowe recalls that Patterson said something to him which sounded "something like stay out of it." At that time, Marlowe was standing a few feet in front of the car and saw that Patterson was holding a gun in his right hand along the side of his leg. Marlowe started to walk away, but turned to ask Patterson something. When Marlowe turned toward Patterson, Patterson raised the gun, pointed it at Marlowe, and shot him. The bullet struck Marlowe in the neck and he fell to the ground on his back.

Marlowe testified that the driver's side door was closed and that Patterson's hand did not touch the car door. Marlowe also testified that after he was shot, Patterson walked past him toward the swimming hole, but before enough time passed for him to go to the swimming hole and back Patterson returned. According to Marlowe, neither Patterson nor his wife assisted him as he lay on the ground. As a result of the gunshot wound, Marlowe is permanently paralyzed from his mid-chest down.

Patterson testified, however, that he did not intend to shoot Marlowe. He admits that he intentionally cocked the single action pistol which would not fire unless the pistol was cocked, and that he knew the pistol had a hair trigger. Nevertheless, he testified that he was standing between the car door and the car, that he used the pistol to push the door open, and, that the pistol hit the door causing it to fire. He testified he went immediately to Marlowe's assistance, and he did not go past Marlowe down toward Stiles. According to Patterson, he threw the pistol in the car after Marlowe was shot and he had no intention of going down to the creek and shooting Stiles. Both Patterson and his wife testified they tried to assist Marlowe until others

came and took him to the hospital. Patterson's statement to the investigating officers that he was mad at Stiles because Stiles was trying to pick a fight with Patterson in front of Patterson's wife and children, was admitted in evidence. In the statement he also said that he was going to kill Stiles.

Patterson appeals and enumerates that the court improperly charged the jury on inferences which could be drawn, by failing to recharge the jury on intention as a necessary element of the offense, by denying the defendant's motion for a mistrial after a State's witness improperly introduced evidence of Patterson's character, and by denying Patterson's motion for a directed verdict on the criminal attempt charge. *Held*:

1. The first enumeration of error contends that the charge to the jury on inferences which might be drawn from intentional use of a deadly weapon impermissibly shifted the burden of proof to the defendant. Patterson relies upon *Powell v. State*, 187 Ga. App. 878, 879 (372 SE2d 234) for this proposition. *Powell v. State* is physical precedent only. See Rule 35 (b) of this court. Further, the charge given in *Powell* differed in important respects from the charge under attack by Patterson. Most significantly in the instant case, the charge advised the jury that it "may infer" and further that "whether or not [it made] any such inference or inferences in this case is a matter solely within the discretion of you members of the jury." In *Powell* the charge was that the "law infers." The opinion in *Powell* at 880 correctly noted that "[t]he law does not draw 'conclusions' as to intent or other factual matters. Factual decisions and conclusions are matters that belong exclusively to the province of the jury." The charge in this case which instructed the jury it might infer certain matters, if it chose to do so, and whether it made any inferences of any kind was a matter solely within the jury's discretion was not burden-shifting. *Catchings v. State*, 256 Ga. 241, 248 (347 SE2d 572); *Worth v. State*, 179 Ga. App. 207, 209 (346 SE2d 82). Accordingly, the first enumeration of error is without merit.

2. The second enumeration of error asserts that the trial court erred by failing to recharge the jury on intention when the court recharged on other matters specifically requested by the jury. No error was committed. Whether to recharge in full or only on the points requested by the jury is a matter within the sound discretion of the trial judge. *Dyson v. State*, 155 Ga. App. 297, 298 (270 SE2d 711). The jury had been correctly charged earlier on intention, and the focus of the jury's question was not on that issue directly. Further, no question has been raised about legal correctness of the original charge on intention or the matters given in the recharge. Thus, our review on this issue is limited to determining whether the trial judge abused his discretion. *Taylor v. State*, 169 Ga. App. 842, 844 (315 SE2d 661).

Under the circumstances, we find no abuse of discretion and no error.

3. The third enumeration alleges that the trial court erred by refusing to grant a mistrial motion after an agent from the Georgia Bureau of Investigation testified that Patterson's wife had said that he was on probation and had two DUIs. The record reflects that the trial court admonished the agent about this testimony, and promptly informed the jury that the agent's testimony was improper and that the court had so admonished the agent. Further, the trial court also instructed the jury that they were not to consider those matters for any purpose. After these instructions Patterson renewed his motions, and alleges that such instructions were insufficient and that as the State asked the question which elicited the objectionable response, a mistrial was required. He relies upon our decisions in *Boyd v. State*, 146 Ga. App. 359 (246 SE2d 396) and *Brown v. State*, 118 Ga. App. 617 (165 SE2d 185) for this proposition. Examination of those cases shows that both decisions are exceptions to the general rule that motions for mistrial are largely within the discretion of the trial judge. *Lee v. State*, 154 Ga. App. 562 (269 SE2d 65). The matters which Patterson properly found objectionable in this case, however, hardly fall within the category of prejudicial comments which were found to require a mistrial in *Boyd* and *Brown*. Although the agent's comments were made in response to a question by the prosecutor, there is no indication that the question was designed to evoke the answer made, or to prejudice the jury. Further, the record shows that the prosecutor apologized to the court and offered to accept any admonishment the court deemed appropriate. More significantly, we do not find that this agent's response was "inherently prejudicial and incapable of being cured." *Sabel v. State*, 250 Ga. 640, 644 (300 SE2d 663). While alcohol was certainly a factor in this case, knowing that the appellant was on probation for DUI is not information of the kind to prejudice the jury against Patterson. "The decision whether to grant a mistrial or give a curative instruction ordinarily rests in the trial judge's sound discretion. [Cit.]" *Dimauro v. State*, 185 Ga. App. 524 (364 SE2d 900). The trial court did not abuse its discretion by not granting a mistrial under the facts of this case. *Mims v. State*, 180 Ga. App. 3, 4 (348 SE2d 498).

4. Patterson's fourth enumeration of error asserts the failure of the trial court to direct a verdict of acquittal on Count II charging Patterson with the criminal attempt to commit the crime of aggravated assault on Stiles in violation of OCGA § 16-5-21. He alleges that the State failed to introduce sufficient evidence to establish that Patterson committed the criminal attempt. We must reverse, but not for the precise reason Patterson asserts in support of this particular enumeration of error.

Patterson was charged with attempting to commit an aggravated

assault on Dennis Stiles. According to OCGA § 16-5-21, a person commits the offense of aggravated assault when he assaults another with specific intent to commit certain enumerated crimes not relevant here, or assaults with a deadly weapon or an object which actually or is likely to produce serious bodily injury. In this state one commits an assault against another when one either attempts to commit a violent injury to the person of another, or when one commits an act which places another in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20. Because Stiles was unquestionably asleep or passed out on the creek bank during the time relevant to this count, he could not have been placed in apprehension of receiving an injury, and thus the assault charged in Count II perforce must have been based upon the attempt theory. Consequently, Patterson was charged with and prosecuted for the criminal attempt to attempt to commit a violent injury to Dennis Stiles with a deadly weapon. "We know of no law authorizing the conviction for an attempt to commit a crime which itself is a particular type of attempt to commit a crime." *Porter v. State*, 124 Ga. App. 285, 286 (183 SE2d 631). "As an assault is itself an attempt to commit a crime, an attempt to make an assault can only be an attempt to attempt to do it, or to state the matter still more definitely, it is to do any act towards doing an act towards the commission of the offense. This is simply absurd. As soon as any act is done towards committing a violent injury on the person of another, the party doing the act is guilty of an assault, and he is not guilty until he has done the act." *Wilson v. State*, 53 Ga. 205, 206. In a similar manner, "[t]here is of course, no such offense as an *attempt* to commit an *assault with intent* to rape." *Green v. State*, 82 Ga. App. 402, 405 (61 SE2d 291). See also *Alexander v. State*, 66 Ga. App. 708, 710-712 (19 SE2d 353). Accordingly, we must reverse Patterson's conviction of Count II and its sentence.

*Judgment affirmed in part and reversed in part. Benham, J., concurs. Deen, P. J., concurs in Divisions 1, 2, 3, and in the judgment.*

DECIDED JULY 10, 1989 —
REHEARING DENIED JULY 25, 1989 —

*Weaver & Weaver, George W. Weaver, Brenda S. Weaver*, for appellant.

*Roger G. Queen, District Attorney, J. Roger Thompson, Assistant District Attorney*, for appellee.