A02A1535. ROUNDTREE v. THE STATE.
(572 SE2d 366)

POPE, Senior Appellate Judge.

Vincent Troy Roundtree was convicted of the offenses of shoplifting and misdemeanor obstruction. The jury acquitted him of a separate charge of carrying a concealed weapon. He appeals.

1. Roundtree contends that the evidence at trial was insufficient to authorize a conviction on the shoplifting charge. "On appeal from a

---

criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict." (Citation omitted.) *Johnson v. State*, 255 Ga. App. 721 (566 SE2d 440) (2002).

Viewed in that light, the evidence showed that Roundtree entered a Home Depot store in Gwinnett County on April 1, 2000. As he came in through the main entrance to the store, he was observed by Daniel Brant, a Home Depot employee. Brant noticed that Roundtree had a sweatshirt draped over his shoulder, even though the temperature was in the seventies outside, and that he appeared to be "kind of staggering." Brant testified that he did not believe that Roundtree had anything in his hand when he entered the store. Brant then called Joseph Eames, an assistant store manager, to report Roundtree because Brant was concerned that Roundtree might try to use the sweatshirt to conceal merchandise.

Brant then observed Roundtree go into the store's tool corral, where drill bits and power tools are stocked. Brant stated that he did not observe Roundtree stop at the store's return counter, which is located at the store's main entrance, before heading to the tool corral. Brant also testified that Roundtree had no merchandise in his hands when he entered the tool corral, at which point he lost sight of Roundtree. Brant later observed Roundtree emerge from the tool corral and head for the store's greenhouse. At that point, Roundtree was being followed by Eames.

After Roundtree emerged from the tool corral, Eames observed that he had some drill bits, an item known as a "power nut," a sweatshirt, and a Home Depot catalog in his hand. The drill bits and the power nut are items carried in Home Depot's inventory. Although Roundtree passed the return counter on his way to the greenhouse, he did not stop there. Roundtree then went into the greenhouse, and Eames lost sight of him for about 30 seconds. When he again saw Roundtree, Eames could not see the merchandise he had observed previously. He could see only the sweatshirt. Roundtree then exited the store through the rear loading gates adjacent to the greenhouse without stopping at a cash register. Eames approached him to ask if he could see what was in the sweatshirt. Eames subsequently discovered the drill bits and the power nut wrapped up in the store catalog, which was in turn wrapped inside the sweatshirt. Roundtree also had a plastic bag balled up in the hand he held underneath the sweatshirt. Roundtree was unable to produce a receipt for the merchandise.

When Eames asked Roundtree why he had the items, he first stated that his cousin had just purchased the items, but he did not know where his cousin was. Eames asked Roundtree to come back into the store with him. On the way back through the store, Round-

tree told Eames that he was returning the items for his cousin, but he could not remember his cousin's name. When they got to the store's training room, Roundtree told Eames that his cousin's name was Troy Roundtree. Eames paged "Troy Roundtree" several times, but never got a response. Eames later determined from Roundtree's identification that he was actually Troy Roundtree.

Roundtree testified that he had the items when he entered the store and that he had gone directly to the return counter to return the items for a man named "Mark," who offered him money. He stated that he was unable to complete the return because the store offered only a store credit and not cash. He said that he then went looking for a restroom and eventually exited the store when he was stopped by Eames.

Roundtree asserts that the evidence was insufficient to support his conviction because no witness testified that they observed him remove the items from the store's shelf and because the State could not prove that the items at issue came from the Home Depot store where Roundtree was arrested. From our review of the record, however, we find that the evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that Roundtree was guilty of the offense of shoplifting. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Burden v. State*, 226 Ga. App. 103, 104 (1) (485 SE2d 228) (1997); *Winn v. State*, 215 Ga. App. 120 (1) (449 SE2d 667) (1994).

2. Roundtree also argues that the trial court erred by allowing the State to strike juror Troy Marshall in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Marshall, who is African-American, was the only member of Roundtree's race on the jury panel.

In *Batson*, the United States Supreme Court set out the following three-part test for evaluating challenges to peremptory strikes:

> (1) the opponent of a peremptory strike must make out a prima facie case of racial discrimination; (2) the burden of production then shifts to the proponent of the strike to give a race-neutral explanation for the strike; and (3) if a race-neutral explanation is given, the court must then decide if the opponent of the strike has proven purposeful racial discrimination.

(Footnote omitted.) *Shelley v. State*, 255 Ga. App. 360, 361-362 (2) (565 SE2d 567) (2002).

The State concedes that Roundtree made out a prima facie inference of racial discrimination, but asserts that it also met its burden of providing race-neutral reasons to explain the strike. In response to

the *Batson* challenge, the prosecutor explained that he struck juror Marshall because he had a prior bad experience with a white police officer, and all the prosecution witnesses in the case, including the police officer who arrested Roundtree, were white. Marshall had explained that while riding in Jackson, Mississippi, in his father's car, he was pulled over by a white police officer who ran a check to determine if the car had been stolen. Marshall believed that he was pulled over only because he was an African-American man driving a nice car. The prosecutor also cited Marshall's ongoing work with a prison ministry, which the prosecutor felt, in combination with his prior negative experience with police, would affect the juror's ability to be fair and impartial. The trial court denied the *Batson* challenge, noting that he understood the prosecution's strike to be based, in part, upon a concern that the juror may have racial animus himself. The prosecution confirmed this.

Although the prosecutor mentioned race in explaining the strike, the underlying concern appeared to be the juror's inability to put aside the prior incident in rendering a verdict in this case. We have previously held that "[a] concern that a juror, because of prior negative involvement with law enforcement, could not be impartial in considering the charges against the defendant is a race-neutral reason for exercising a strike." *Alford v. State*, 224 Ga. App. 451, 458 (6) (480 SE2d 893) (1997). Moreover, the juror's involvement with a prison ministry was yet another race-neutral explanation for the strike. See generally *Sears v. State*, 268 Ga. 759, 763-764 (8) (493 SE2d 180) (1997); *George v. State*, 262 Ga. 436, 437 (2) (421 SE2d 67) (1992) (cases where prosecution cited prison counseling as one of several reasons for striking a juror).

We find that Roundtree failed to provide any argument or evidence, other than mere speculation, showing that the State's reasons were other than race-neutral:

> In reviewing the trial court's evaluation, we must be mindful that the ultimate burden of persuasion regarding racial motivation in the exercise of peremptory strikes rests with, and never shifts from, the opponent of the strike. In each of these matters, the findings of the trial court are entitled to great deference, and should not be disturbed unless clearly erroneous.

(Citations and punctuation omitted.) *Russell v. Parkford Mgmt. Co.*, 235 Ga. App. 81, 84 (2) (508 SE2d 454) (1998).

Accordingly, we find no error in the trial court's overruling of Roundtree's *Batson* objection. *Horne v. State*, 237 Ga. App. 844, 847 (4) (517 SE2d 74) (1999) (affirming trial court's rejection of *Batson*

challenge where prosecution struck only African-American juror because juror had a prior negative experience with police and was a social worker).

3. Roundtree also contends that his trial counsel was ineffective because he failed to interview and subpoena material and exculpatory witnesses for the defense. "In making this determination, [the appellate courts apply] the two-prong test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), under which the convicted defendant is required to show both that counsel's performance was deficient and that the deficiency prejudiced the defense." (Citation omitted.) *Carr v. State*, 275 Ga. 185, 187 (5) (563 SE2d 850) (2002). Generally, the decision as to which defense witnesses to call is a matter of trial strategy and tactics which do not constitute ineffective assistance of counsel. *Hazelrigs v. State*, 255 Ga. App. 784, 787 (2) (567 SE2d 79) (2002).

Roundtree asserts that his counsel failed to identify and secure the appearance of the Home Depot employee with whom Roundtree spoke at the return desk. At the hearing on his motion for new trial, Roundtree presented testimony from Home Depot employees that the records showing the list of return desk employees was available, although the list would have been incomplete. He also asserts error in his trial attorney's failure to subpoena Home Depot Loss Prevention Supervisor Carla Brown, who had information as to whether a surveillance tape existed of the incident. Brown also testified at the new trial hearing. She stated that at the time of the trial there was no existing videotape of the period in which Roundtree was in the store. Roundtree testified at the hearing that he had wanted Brown to testify at his trial, so the jury could see that she was not being truthful.

Roundtree's trial attorney also testified at the motion hearing. Although he made an effort to locate the return desk employee through a discussion with Home Depot employees, he stated that he did not subpoena employment records because his client had pressed for a speedy trial demand. The attorney felt that their best strategy was to try to get the videotape to show Roundtree's actions that day and that his efforts would be best focused elsewhere given the time pressures of the speedy trial demand. Further, he decided prior to trial not to call Brown because her explanation for the absence of the videotape may not have been helpful. He decided, instead, to use the unexplained absence of the videotape to argue to his client's advantage.

We find, therefore, that the decision not to pursue the noted witnesses was a matter of trial strategy. "The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a

finding that appellant received representation amounting to ineffective assistance of counsel." (Citations and punctuation omitted.) *Cook v. State*, 274 Ga. 891, 897 (7) (561 SE2d 407) (2002). Moreover, Roundtree failed to establish how the failure to call these witnesses resulted in prejudice to his case. He did not demonstrate that the testimony of any of the Home Depot employees would have supported his version of events.

*Judgment affirmed. Ruffin, P. J., concurs. Barnes, J., concurs in Divisions 1 and 3 and in the judgment only as to Division 2.*

DECIDED OCTOBER 9, 2002.

*Pamela T. Britt*, for appellant.
*Daniel J. Porter, District Attorney, Jeanette J. Fitzpatrick, Phil Wiley, Assistant District Attorneys*, for appellee.