A02A2247. ANDERSON v. THE STATE.
(580 SE2d 249)

MIKELL, Judge.
Michael Anderson was charged with homicide by vehicle in the first degree, serious injury by vehicle, driving under the influence of

---

alcohol ("DUI"), driving with a suspended license, failure to maintain lane, driving without insurance, operation of a vehicle without current license plate, and failure to use safety belts. The indictment charged him with DUI to the extent that he was a less safe driver and per se DUI, based on a blood alcohol concentration of 0.10 grams or more within three hours of operating a motor vehicle. The trial court granted a directed verdict to Anderson on the per se DUI charge, because the state failed to prove that his blood was drawn within three hours of his operation of the vehicle.[1] At the close of the evidence, Anderson pleaded guilty to the charges of driving with a suspended license, driving without insurance, operation of a vehicle without a current license plate, and failure to use safety belts. The jury returned a guilty verdict on the remaining charges of vehicular homicide, serious injury by vehicle, DUI — less safe driver, and failure to maintain lane. Anderson filed a motion for a new trial, which was denied. He appeals his conviction,[2] assigning error to the trial court's instruction to the jury. We affirm.

"On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict." (Citation omitted.) *Cupe v. State*, 253 Ga. App. 851 (560 SE2d 700) (2002). So viewed, the record shows that after lunch on May 24, 2001, Anderson left the Bulldog Tavern in a white Pontiac Firebird and turned onto Highway 76, traveling west. Jacob Wayne Gribble, who was driving a bread truck on Highway 76 when Anderson pulled out in front of him, testified that Anderson drove erratically, almost struck numerous mailboxes on the right side of the road, and frequently stopped for no apparent reason. Another witness, Amanda King, observed Anderson that day and described his driving as "dangerous." She testified that after pulling onto the highway, Anderson "took off really fast, then he was weaving[,] then he would pass a car going over a hill. He would speed up real fast and slow down almost to a stop."

Near the intersection of Highway 76 and Persimmon Road, Anderson encountered a truck pulling a backhoe at a slow rate of speed. Despite the fact that he was traveling around a blind curve in the road, Anderson veered left into a lane of oncoming traffic to pass the truck. Five motorcycles were traveling together in that lane, and Anderson struck three of them, leaving one man dead and another partially paralyzed. Both Gribble and King witnessed the accident.

John Hueber testified that he, his brother Luke Hueber, Billy

---

[1] A technician from the Georgia Bureau of Investigation division of forensic sciences testified that a test of Anderson's blood revealed an alcohol concentration of 0.13 grams.

[2] Anderson does not challenge the validity of his guilty pleas. His appeal only applies to the vehicular homicide, serious injury by vehicle, DUI, and failure to maintain lane convictions.

Sawyer, David Johnson, and Mike Martin were on their annual motorcycle trip when they encountered Anderson's vehicle. The five men were experienced motorcyclists who had taken safe riding courses, wore helmets and other safety equipment and clothing, and rode in formation. John Hueber led the group on the date in question, and he testified that they had been traveling at approximately 45 or 50 mph before slowing down as they neared a curve in the highway. Hueber further testified that as the motorcycles approached the blind curve, he suddenly saw Anderson's white Firebird move quickly into their lane of traffic to pass a truck. Hueber attempted to avoid the car, but his motorcycle struck the Firebird near the driver's side headlight. He recalled his motorcycle turning sideways and rolling, but he suffered only bruises.

Luke Hueber was traveling between 50 and 100 feet behind his brother. He testified that he observed the white Firebird "dart[ ] out to try to pass the cars" and subsequently strike John Hueber's motorcycle. According to Luke, John's motorcycle somehow hooked onto Anderson's front driver's side tire, causing the tire to come off the car. Luke was able to avoid colliding with the Firebird. He was hit in the face and leg by debris but otherwise escaped the incident uninjured.

Immediately after coming to a stop, Luke ran to where John was getting to his feet. After the two men confirmed that neither was seriously hurt, they went to look for their friends. David Johnson had been traveling behind Luke in the formation. John found him lying face down on the ground with vomit in front of him and blood coming from his nose. His fingers and legs appeared to be broken, and he had been knocked out of the boots he was wearing. The Firebird was stopped, five or six feet from where he lay. Johnson was taken by helicopter to Rabun Memorial Hospital, where he was pronounced dead on arrival. Dr. Michael Hollowfield testified that Johnson had suffered massive blunt chest trauma and severe internal injuries.

Billy Sawyer had been traveling fourth in the formation, behind Johnson. He testified that the last thing he remembered from the accident was seeing the white Firebird in his lane. John Hueber testified that he found Sawyer lying unconscious in the road near Johnson after the collision. Sawyer was transported to the hospital, where he complained of neck and abdominal pain. He was diagnosed with a neurological deficit in his upper left extremities and a broken neck. Sawyer testified that his left side is partially paralyzed, and that he is not expected to recover fully.

Deputy Mike Carnes of the Rabun County Sheriff's Department was the first officer to arrive at the scene. He determined that Anderson was the driver of the white Firebird. Carnes testified that he detected the odor of alcohol on Anderson and that he placed Anderson in the back of a patrol car. Pursuant to department policy,

Carnes contacted the Georgia State Patrol because the accident involved serious injuries.

State Trooper Samuel Taylor arrived shortly thereafter. After assessing the scene of the accident and determining that Anderson was the driver, Taylor approached Anderson, who was in Deputy Carnes' patrol car. Taylor read the *Miranda* warning to Anderson, who stated that he did not have any questions about his rights and did not ask for a lawyer. Taylor testified that when Anderson exited the car, the trooper observed that his eyes were bloodshot and glassy, that he had a strong odor of alcohol about his person, and that he appeared unsteady on his feet. After reading Anderson the implied consent notice, Taylor administered an alco-sensor test, which was positive for the presence of alcohol. Taylor also performed the horizontal gaze nystagmus test and observed that Anderson exhibited all six clues indicating intoxication. Next, Taylor administered two field sobriety tests, the "one leg stand" and the "walk and turn." Taylor testified that Anderson's performance on the two tests led him to believe that Anderson had consumed alcohol. The trooper further testified that, in his opinion, Anderson was under the influence of alcohol to the extent that he was less safe to drive.

Corporal Scott Short, a member of the State Patrol specialized collision reconstruction team, testified as an expert witness in the area of accident reconstruction. Short inspected the scene of the accident and the vehicles involved. He determined that the Firebird was traveling west in the eastbound lane; that the motorcycles were traveling east in the proper lane, and that the vehicle's collisions with all three motorcycles happened in the eastbound lane. Short interviewed Anderson at the jail on the night of the accident. After reading Anderson his *Miranda* rights, Short obtained a voluntary statement from the defendant. According to Short, Anderson admitted that he did not have a valid driver's license; that the car was not insured; that there was not a valid license tag on the car; and that he was not wearing a seat belt at the time of the accident. Anderson also told the officer that he and a friend had been drinking alcohol since 9:00 that morning; that they drank continuously throughout the day; that he had consumed approximately one twelve-pack of beer the night before; and that he had not eaten much food over the past two days.

On appeal, Anderson contends that the trial court committed reversible error by giving the following charge in its instruction to the jury:

> Now if you should find from the evidence in this case that at the time of the alleged offense the amount of alcohol in the Defendant's blood as shown by a chemical analysis of the Defendant's blood or breath was 0.08 grams or more of alco-

hol, then you may infer that the Defendant was under the influence of alcohol. However, whether or not you make such an inference is a question for you to decide. Now if you find from the evidence that there was 0.05 grams or less of alcohol in the Defendant's blood at the time of the alleged offense, there is a presumption that the Defendant was not under the influence of alcohol, but this presumption may be rebutted. Now if you find that the alcohol concentration of Defendant's blood was in excess of 0.05 grams but was less than 0.08 grams at the time of the alleged offense, then such fact may be considered along with any other evidence in determining whether or not the Defendant was under the influence to the extent that it was less safe for the Defendant to drive at the time of the alleged incident.

Anderson argues that the charge improperly shifted the burden of proof to the defense. Additionally, he argues that because there was no evidence that his blood was drawn within three hours of the accident or of how his alcohol level affected his driving, the trial court should not have instructed the jury on the inferences contained in OCGA § 40-6-392 (b). We disagree and conclude that the jury charge did not constitute reversible error.

OCGA § 40-6-391 (a) (1) establishes the offense of DUI — less safe driver and provides that "[a] person shall not drive or be in actual physical control of any moving vehicle while . . . [u]nder the influence of alcohol to the extent that it is less safe for the person to drive." In *Stepic v. State*, 226 Ga. App. 734 (487 SE2d 643) (1997), we recognized that "[e]ven though an elevated blood alcohol level may indicate that a driver is 'under the influence,' it is solely within the determination of [the] trier of fact as to whether a defendant was, as a result of alcohol ingestion, a 'less safe' driver." (Citations omitted.) Id. at 735 (1). Thus, the relevant inquiry is whether the jury instruction at issue contained language "reaffirming that it is within the jury's discretion whether or not it will draw such an inference." (Citations and punctuation omitted.) Id. We find that the challenged jury charge contained such language and therefore did not constitute error.

Like Anderson, the defendant in *Stepic* was charged with DUI — less safe driver. Id. at 734. We found that the jury instruction at issue in that case was erroneous because it contained a mandatory inference that "if [the jury] believed the appellant's alcohol concentration was .08 or more, it 'shall be inferred' that the appellant was under the influence of alcohol." (Citation omitted.) Id. at 735. We reasoned that the erroneous charge improperly shifted the burden of proof to the defendant, "forcing him to present evidence rebutting the infer-

ence." (Citations omitted.) Id. However, we went on to recognize that the following charge, which was taken from the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases and is nearly identical to language in the jury instruction in the case sub judice, would be proper:

> If you find that the defendant was driving with an alcohol concentration of 0.08 grams or more, it *may be inferred* that he was under the influence of alcohol. *However, whether or not you make such inference in this case is a matter solely within your discretion as members of the jury.*

(Citations and punctuation omitted; emphasis supplied.) Id. at 735-736.

Accordingly, because the jury charge in the present case contained language reaffirming that it was within the jury's discretion to determine whether Anderson was under the influence of alcohol to the extent that he was a less safe driver, we find no error on this ground. See *Thompson v. State*, 257 Ga. 481, 483 (6) (361 SE2d 154) (1987); *Animashaun v. State*, 216 Ga. App. 104, 106 (3) (453 SE2d 126) (1995); *Patterson v. State*, 192 Ga. App. 449, 451 (1) (385 SE2d 311) (1989).[3] The state presented overwhelming evidence other than Anderson's blood alcohol concentration to demonstrate the effect alcohol had on his driving ability. We affirm the conviction.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 25, 2003 —
RECONSIDERATION DENIED MARCH 27, 2003.

*Michael H. Cummings II*, for appellant.
*Michael H. Crawford, District Attorney, Robert D. Cullifer, Assistant District Attorney*, for appellee.

---

[3] The cases cited by Anderson in support of his argument are distinguishable. In *Holcomb v. State*, 217 Ga. App. 482, 484 (3) (458 SE2d 159) (1995), the judge charged the jury on the conclusions that may be drawn from various blood alcohol levels by using the term "presumption" and the phrase "shall be inferred." Similarly, in *Simon v. State*, 182 Ga. App. 210, 212 (4) (355 SE2d 120) (1987) (physical precedent only), the charge included the mandatory language "shall be presumed." Here, the instruction provided that the jury may draw certain inferences, but that "whether or not you make such an inference is a question for you to decide."