### A03A2148. FLANAGAN v. THE STATE.
(592 SE2d 894)

ADAMS, Judge.

Defendant Travis S. Flanagan was found guilty by a jury of criminal attempt to commit burglary and possession of tools for the commission of a crime. He appeals following the denial of his motion for new trial.

1. Flanagan first contends the trial court erred by rejecting his claim under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), that the State exercised its peremptory strikes in a racially discriminatory manner during jury selection. The three-step procedure for analyzing a *Batson* challenge is well known.

> The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent.

(Footnote omitted.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996).

The record shows that there were four African-Americans in the jury pool, and that the State exercised two of its six strikes to remove an African-American male and an African-American female from the pool. In response to the *Batson* motion, the State explained that it struck the African-American male because he did not have a stable employment history, and that it had struck both white male and white female jury pool members for the same reason. We have previously held that an unstable job history can justify the use of a peremptory strike. *Ware v. State*, 258 Ga. App. 706, 708 (2) (574 SE2d 898) (2002).

As to the female African-American juror, the State explained that it had information from three deputies in the sheriff's department that the juror's sons and daughters were involved in criminal activity. "The state 'may rely on information and advice provided by others so long as this input is not predicated upon the race of the prospective juror.' [(Citations and punctuation omitted.) *Pye v. State*, 269 Ga. 779, 780 (1) (505 SE2d 4) (1998).]" *Pless v. State*, 247 Ga. App.

786, 788 (3) (545 SE2d 340) (2001). And "[o]ur Supreme Court has previously found that such a strike, based on a prospective juror's relationship with people who have been in trouble with the law, was race-neutral. *Hall v. State*, 261 Ga. 778, 779 (2) (415 SE2d 158) (1991)." *Christian v. State*, 244 Ga. App. 713, 715 (3) (536 SE2d 600) (2000). "A neutral explanation means an explanation based on something other than the race of the juror. Unless a discriminatory intent is inherent in the proponent's explanation, the reason . . . will be deemed race neutral." (Punctuation and footnote omitted.) *Morris v. State*, 246 Ga. App. 260, 262 (540 SE2d 244) (2000). The explanations given by the State in this case were race-neutral.

Therefore, we turn to the third step of the analysis — the trial court's determination of whether Flanagan as the opponent of the strike has proven discriminatory intent. *Malone v. State*, 225 Ga. App. 315, 317 (1) (484 SE2d 6) (1997). Flanagan argued that the potential juror who was struck because of an unstable employment history was only 19 years old and thus he would not be expected to have an extensive employment history. But the trial court noted that the State struck other "young" people who had an unstable employment situation. Flanagan further argued the State gave "conflicting" reasons for striking the female African-American juror because the State first explained the juror was struck because members of her family had been "prosecuted" for crimes, but later clarified that there was no specific information that the family members had actually been the subject of criminal prosecutions, but that the information concerning their involvement in criminal activity came from deputy sheriffs who were familiar with such activity in the area. The trial court found that since the family members implicated in criminal activity were the juror's children, as opposed to more distant relatives, it was assumed she would have knowledge of that activity.

> In reviewing the trial court's evaluation, we must be mindful that the ultimate burden of persuasion regarding racial motivation in the exercise of peremptory strikes rests with, and never shifts from, the opponent of the strike. In each of these matters, the findings of the trial court are entitled to great deference, and should not be disturbed unless clearly erroneous. [Cit.]

*Roundtree v. State*, 257 Ga. App. 810, 813 (2) (572 SE2d 366) (2002). The trial court's ruling in this case was not clearly erroneous and offers no basis for reversal.

2. In two somewhat overlapping enumerations of error, Flanagan challenges the sufficiency of the evidence as to his conviction for attempted burglary and contends that there was a fatal variance

between the acts charged in the indictment and the evidence presented at trial. Specifically, Flanagan contends that the indictment charged that he committed that offense by prying open the door of Robertson Optical Laboratories but the evidence at trial showed that the door was not pried open and remained locked at all times.

Construed to support the verdict, the evidence at trial showed that Flanagan drove his girlfriend's car, which his brother Walter had asked to borrow, to Walter's house where the brothers discussed committing a crime. Travis and Walter talked about going to Athens but eventually had Walter's wife drive them to Robertson Optical on Highway 81. Walter retrieved his burglary tools from the trunk of the car where he had placed them before leaving his house, and both he and Travis went to the back of the building where the doors were located. Walter testified Travis stood about eight to ten feet away while he inserted a crowbar near the striker plate on the door and attempted to pry it open. Walter testified that he placed the crowbar in the door in such a way to get the most resistance to open the door, which was his intent.

Walter further testified that after prying on the door for a few minutes, he decided it "wasn't even worth it" and he and Travis went around to the front of the building to wait for his wife to pick them up. However, before they could drive off the premises, they were stopped by a police officer. After further investigation revealed the burglary tools, which had been placed back in the trunk of the car, and the damage to the back door of the building where Walter had attempted to pry it open, Travis, Walter, and Walter's wife were placed under arrest. Walter testified that he subsequently pled guilty to criminal attempt to commit burglary and possession of tools to commit a crime, the same charges for which Travis was on trial in this case.

The general manager of Robertson Optical testified that he went to the scene on the night of the crime and that the striker plate on the back door had been pried, bent, and pulled loose, but that the door was still locked. Testimony from the police officers investigating the crime confirmed that the back door had pry marks on it but that the door was not pried open.

The indictment, in relevant part, charged that Flanagan "attempt[ed] to commit the crime of Burglary, in that the said accused did knowingly and intentionally perform an act which constituted a substantial step toward the commission of said crime, to wit: the accused pried open the door of Robertson Optical Laboratories, Inc., with intent to commit a theft therein."

The State concedes there was a variance between the indictment and the evidence presented at trial, but argues it was not fatal. We agree.

We no longer adhere to an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. (Cit.) Only if the allegations fail to meet these tests is the variance "fatal." (Punctuation and footnotes omitted.) *Turner v. State*, 231 Ga. App. 747-748 (1) (500 SE2d 628) (1998).

*Abney v. State*, 240 Ga. App. 280, 281-282 (2) (523 SE2d 362) (1999). The indictment here definitely informed Flanagan of the attempted burglary charge and did not mislead him so as to impede his ability to present his defense. Moreover, there is no question that he is protected from another prosecution for that same offense. There was no fatal variance in this case. *Edward v. State*, 261 Ga. App. 57, 59 (2) (581 SE2d 691) (2003).

Citing *Patterson v. State*, 192 Ga. App. 449, 452-453 (4) (385 SE2d 311) (1989) (physical precedent only), Flanagan also argues that the evidence was insufficient because at most the evidence in this case showed an attempt had been made to pry open the door, and evidence showing an attempt to commit an attempt crime cannot support a conviction. But *Patterson*, in which we characterized the acts leading to the attempted aggravated assault charge as an "attempt to attempt to commit a violent injury," id. at 453, is not applicable here. The question here is whether the evidence was sufficient to show an attempt to commit the crime of burglary, which unlike the assault in *Patterson*, is not itself an attempt crime. See *State v. Rooks*, 266 Ga. 528-529 (1), (2) (468 SE2d 354) (1996) (distinguishing *Patterson* as to crime of attempted aggravated stalking). "A person commits the offense of criminal attempt when, with intent to commit a specific crime, *he performs any act which constitutes a substantial step* toward the commission of that crime." (Emphasis supplied.) OCGA § 16-4-1. "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within . . . any building. . . ." OCGA § 16-7-1. Thus, the issue in this case is whether inserting a crowbar in the locked door to a business with the intent of prying open that door, and exerting pressure on that crowbar in such a manner that the striker plate on the door was bent and damaged, consti-

tutes a "substantial step" toward the commission of the crime of burglary. We have little hesitancy in concluding that it does. We find this and other evidence presented at trial sufficient to authorize Flanagan's conviction beyond a reasonable doubt as a party to the crime of the attempted burglary of Robertson Optical. *Landers v. State*, 255 Ga. App. 410 (1) (565 SE2d 585) (2002).

3. Lastly, Flanagan challenges the sufficiency of the evidence as to his conviction for possession of tools for the commission of a crime, contending that the State failed to prove his actual or constructive possession of these tools. We rejected a similar contention in *Solomon v. State*, 180 Ga. App. 636 (350 SE2d 35) (1986), where there was evidence that the defendant and others jointly participated in the commission of a burglary.

> "(W)here two or more persons enter into a conspiracy to commit burglary, and in attempting to carry out such felonious design either of them has in his possession burglary tools, such possession is the possession of all, and each is guilty of a violation of [OCGA § 16-7-20], prohibiting and punishing the possession of such tools." [Cits.]

Id. at 636-637 (1). Such was the situation with Flanagan and his brother so that "[e]ach, then, was responsible for the acts of others in carrying out the common purpose as if he himself had committed the act. [Cits.]" Id. at 637. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), as to this charge also. *Jones v. State*, 261 Ga. App. 698, 700-701 (1) (583 SE2d 546) (2003).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JANUARY 9, 2004.

*H. Edward Marks, Jr.*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, James P. Blum, Jr., Assistant District Attorney*, for appellee.