### A08A0358. ARMOUR v. THE STATE.
(663 SE2d 367)

ADAMS, Judge.

Alice Armour was tried and convicted of attempted burglary. She was sentenced to ten years incarceration. She appeals and raises several enumerations of error.

1. In two enumerations, Armour contends the jury's verdict was not supported by the evidence and that it was contrary to the weight of the evidence. On appeal, however, we do not assess the weight of the evidence or the credibility of witnesses. Instead, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

Construed in favor of the verdict, the evidence shows that Roger Williams is an owner and officer of a sawmill named "Forsyth Hardwoods," which, although not being operated, was fit for operation. Sometime in late February or early March 2006, a significant amount of copper wiring was stolen from the main electrical supply room, and Williams could see tire tracks on the property, which, he concluded, showed the route the robbers had taken on the property. He also saw tools the robbers had left behind and significant damage. Williams decided to personally monitor the premises because, based on his observations, the robbers had not finished the job. On March 4, 2006 at about 8:00 a.m., Williams saw a pickup truck arrive with three people in the cab — two men and a woman, and the truck

---

[33] (Punctuation omitted.) *Kilby v. State*, 289 Ga. App. 457, 460 (3) (657 SE2d 567) (2008).

[34] See id.; *Allen*, supra.

followed the tracks Williams had seen. Williams then changed position, and when he could see the truck again, no one was in it. He then saw the two men exiting the building. When the men saw Williams, one ran away. Williams told the other man to stay put, and he went after the man who ran. The runner got away, and as Williams started to return, the pickup truck was coming toward him with the woman at the wheel. Williams testified, "I saw that the lady wasn't going to stop." So, he pointed his shotgun at her, which caused her to stop. Williams told the couple that he was calling the authorities on his phone and that they should stay put until the authorities arrived. But the woman then put the truck in reverse and, spinning the tires in a hasty effort, the truck left the premises.

Williams contacted the police and gave a description of the three individuals. Armour and her live-in boyfriend Russell Hawthorne were detained shortly thereafter only several hundred yards from the truck, which had been wrecked nearby. Hawthorne and Armour admitted at trial that they initially lied to the police about the events. The other man, Hawthorne's long-time friend Corey Brooks, was arrested several days later. Williams identified Armour as the woman he had seen, and he testified that he had never seen her before and did not give her permission to come onto the property.

The entire premises had been fenced in and the front entrance was blocked by a tractor-trailer. So the robbers' route onto the property took them across neighboring church property, through a cemetery and over a barbed-wire fence. A wire-stripping tool, tin cutters, gloves, and a flashlight meant to be worn on a person's head were found in the truck. An identical flashlight was found on Armour.

Hawthorne pleaded guilty and testified at Armour's trial. He admitted that he entered the sawmill property without permission intending to take the copper. He testified that he needed the flashlights because he knew what he was doing was illegal and he would need the light if he had to run away at night. He testified he gave one of the lights to Armour after they had begun to flee, but he claimed that she did not know the mission was illegal.

Armour testified and admitted to most of the above details, but she claimed that she did not know the point of the trip and that Hawthorne told her "don't worry about it" and "just get in the truck and be quiet." She, Hawthorne, and Brooks all testified that she never got out of the truck. Although she lied to the police, she and Hawthorne both testified that Hawthorne told her to do as he said and that he made up the story to tell the police. Finally, she admitted that the trip began at 6:30 a.m. on a Saturday morning and that she did not produce the flashlight when an officer initially asked her to empty her pockets.

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within . . . any . . . building, railroad car, aircraft, or any room or any part thereof." OCGA § 16-7-1 (a). And a person can be convicted of criminal attempt when he or she performs a substantial step toward the commission of that crime with intent to commit a specific crime. OCGA § 16-4-1. "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a).

Armour contends the State did not prove that she had the intent to rob the sawmill. But the jury was authorized to conclude from the facts and circumstances that she knew what she was getting into. The group set out at an early hour on a Saturday morning; the group entered the property in an unusual manner; she drove the getaway truck; she lied to the police; she had a flashlight in her possession; and she failed to produce the flashlight when initially asked. " 'While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense.' [Cit.]" *Strozier v. State*, 277 Ga. 78, 79 (2) (586 SE2d 309) (2003). Furthermore, the jury was authorized to disbelieve Armour's version of the events. See *Bryant v. State*, 282 Ga. 631, 634 (1) (651 SE2d 718) (2007). The evidence was sufficient to convict Armour of attempted burglary. See generally *Flanagan v. State*, 265 Ga. App. 122, 123 (2) (592 SE2d 894) (2004) (standing nearby while brother unsuccessfully attempted to pry door open without permission was a substantial step toward committing attempted burglary).

2. Armour contends the order of restitution is not supported by the evidence. Initially, each defendant was ordered to pay $30,000 restitution. But in *Hawthorne v. State*, 285 Ga. App. 196 (648 SE2d 387) (2007), this Court vacated the order and remanded for a new hearing on restitution. On remand, however, the State abandoned the restitution claim by failing to offer any evidence as to the fair market value of the damaged items, and the trial court set the restitution amount for both Armour and Hawthorne at zero. Armour admitted at the hearing on the motion for new trial that this issue became moot. And Armour does not assert that the trial court erred upon remand. Accordingly, there is nothing for this Court to review.

3. Armour contends the trial court erred by allowing the State to withdraw a plea recommendation that was conditioned upon her acceptance of an illegal or improper demand for restitution. She and the other defendants had been offered fifteen years, to serve five, plus restitution in the amount of $100,000. She contends the restitution amount was improper and that she "should have been

able to avail herself of the benefit of the plea agreement untainted by the improper demand for restitution by the State." But Armour did not testify at the hearing on the motion for new trial, and there is no evidence in the record to show that Armour would have accepted such an offer. Accordingly, she cannot show harm. See *Watson v. State*, 264 Ga. App. 41, 43 (2) (589 SE2d 867) (2003) ("Harm as well as error must be affirmatively shown by the record to obtain reversal.") (citation omitted).

4. Finally, Armour contends her sentence was excessive. She received the maximum sentence of ten years for a first offense of attempted burglary. See OCGA §§ 16-7-1; 16-4-6 (b). She argues that the sentence should have been more lenient given that she had no prior criminal convictions; her participation in the crime was, at best, minimal; the damages suffered by the sawmill were not proximately caused by Armour or the other defendants;[1] and the issue of her involvement was validly contested. But the sentence imposed by the trial judge was within the statutory limits. And "[t]his court will not disturb a sentence within the statutory limits." *Scott v. State*, 240 Ga. App. 586, 588 (3) (524 SE2d 287) (1999).

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MAY 8, 2008 —
RECONSIDERATION DENIED JUNE 20, 2008 — ▮▮▮▮▮

*Leo J. Kight, Jr.*, for appellant.
*Richard G. Milam, District Attorney, Mark S. Daniel, Assistant District Attorney*, for appellee.

---

[1] On the third point, we note that this Court has already held that under a preponderance of the evidence standard, the facts support a finding that the three defendants were involved in the earlier theft of copper from the sawmill. *Hawthorne*, 285 Ga. App. at 198-199 (2).